### In re POOLING FREIGHTS.

#### (District Court, W. D. Tennessee, W. D. May 26, 1902.)

1. **INTERSTATE COMMERCE—CARRIERS—INDICTMENT.**
   Where a carrier is a corporation, not only the carrier itself, but the officers individually, are subject to indictment for violation of the interstate commerce act of February 4, 1887.

2. **SAME—POOLING.**
   Under Act Cong. Feb. 4, 1887, § 5, forbidding the pooling of freights or the division of earnings by competing railroads, either a distribution of property offered for transportation among different and competing railroads in proportions and on percentages previously agreed upon, or a money pool, whereby the aggregate or net proceeds of certain different and competing railroads are divided among them, is prohibited.

3. **SAME.**
   Any arrangement, oral or otherwise, or combination, which has for its purpose and eventuates in the pooling of freights of different and competing railroads, is within the prohibition of the interstate commerce act.

4. **SAME—IMMUNITY TO WITNESS.**
   Act Cong. Feb. 11, 1893, granting immunity to any witness for any offense concerning which he has given testimony before the interstate commerce commission is confined to the witness personally, and cannot be extended to include a corporation which he represents.

HAMMOND, J.   Section 5 of the act to regulate commerce, approved February 4, 1887, forbids the pooling of freights and division of earnings by competing railroads in language as follows:

"That it shall be unlawful for any common carrier subject to the provisions of this act to enter into any contract, agreement, or combination with any other common carrier or carriers for the pooling of freights of different and competing railroads, or to divide between them the aggregate or net proceeds of the earnings of such railroads, or any portion thereof; and in any case of an agreement for the pooling of freights as aforesaid, each day of its continuance shall be deemed a separate offense."

The word "pool" is defined in the Century Dictionary as follows:

"Pool (noun): A combination intended by concert of action to make or control changes in market rates. * * * A combination of the interests of several otherwise competing parties, such as rival transportation lines, in which all take common ground as regards the public, and distribute the profits of the business among themselves equally or according to special agreement.  In this sense pooling is a system of reconciling conflicting interests and of obviating competition, by which the several competing parties or companies throw their revenue into one common fund, which is then divided or redistributed among the members of the pool on a basis of percentage or proportions previously agreed upon or determined by arbitration.
"Pool (verb): To put into one common fund or stock for the purpose of dividing or redistributing in certain proportions; make into a common fund; as to pool interests.
"(Ex.).  The common method of accomplishing this [dividing the tariff between competing lines] is to pool the receipts, and to redistribute them on percentages based upon experience and decided by an arbitrator."

The statute contemplates two methods of pooling, both of which are prohibited:   First, a physical pool, which means a distribution by the carriers of property offered for transportation among different and competing railroads in proportions and on percentages previously agreed upon; and, secondly, a money pool, which is described best in the language of the statute, "to divide between them [different and competing railroads] the aggregate or net proceeds of the earnings of such railroads, or any portion thereof."   By the language "any common carrier subject to the provisions of this act," as employed in section 5, supra, is meant any railroad engaged in the transportation of passengers or property from one state or territory of the United States or the District of Columbia to another state or territory of the United States or the District of Columbia.   Traffic carried only within the territorial limits of a state is not interstate in character, and the instrumentality of its transportation is not subject to the provisions of the statute with respect to such traffic.   If, from the evidence of witnesses the district attorney brings before your body, you find there is probable cause for believing that there exists within the jurisdiction of this court an agreement whereby traffic is or has been within the statutory period of two years divided by and among different and competing lines of railroad, no matter in what proportions, then it will be your duty to return indictments against those who you have reason to believe are probably guilty.   The statute provides for the indictment not only of the carrier itself, but also of the officers individually, where the carrier is a corporation, so that in such case both are indict-

able. The agreement for the division of traffic need not necessarily be reduced to writing in order to constitute an offense. Any arrangement, oral or otherwise, or combination, which has for its purpose and eventuates in the pooling of freights of different and competing railroads, comes within the inhibition of the act to regulate commerce.

In this connection the court charges you that no witness shall be excused from testifying or producing documentary evidence in obedience to a subpœna duces tecum upon the ground or for the reason that his testimony might tend to incriminate him, but, having so testified, and in order that he might not be deprived of the immunity which the constitution vouchsafes him, the act declares that he shall not be prosecuted for any offense of which he has given evidence. The act relating to testimony of witnesses in cases involving violation of the interstate commerce law provides that:

"No person shall be excused from attending and testifying or from producing books, papers, tariffs, contracts, agreements, and documents before the interstate commerce commission, or in obedience to the subpœna of the commission, whether such subpœna be signed or issued by one or more commissioners, or in any cause or proceeding, criminal or otherwise, based upon or growing out of any alleged violation of the act of congress, entitled 'An act to regulate commerce,' approved February fourth, eighteen hundred and eighty-seven, or of any amendment thereof, on the ground or for the reason that the testimony or evidence, documentary or otherwise, required of him may tend to criminate him or subject him to a penalty or forfeiture. But no person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he may testify or produce evidence, documentary or otherwise, before said commission or in obedience to its subpœna or the subpœna of either of them, or in any such case or proceeding: provided, that no person so testifying shall be exempt from prosecution and punishment for perjury committed in so testifying."

You are also instructed that this act of February 11, 1893, does not grant immunity from indictment and prosecution to a corporation even though its officers or agents have been compelled to appear before the grand jury and testify to facts which would tend to incriminate it, or produce books and papers of the corporation bearing upon the offense of which it is charged. The immunity of the statute is confined to the witness who gives his testimony, belongs only to him personally, and cannot, in the nature of the thing, be extended to include the corporation he represents. There is no vicarious immunity provided for by the statute, and therefore the corporation carrier cannot become immune through the grace of the statutory pardon.