# UNITED STATES *v.* TERMINAL RAILROAD ASSOCIATION OF ST. LOUIS.

# TERMINAL RAILROAD ASSOCIATION OF ST. LOUIS *v.* UNITED STATES.

# EVENS & HOWARD FIRE BRICK COMPANY, PETITIONER.

APPEALS FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF MISSOURI. PETITION FOR LEAVE TO INTERVENE.

Nos. 452, 572,—Original. Argued October 20, 1914.. Petition submitted October 13, 1914.—Decided February 23, 1915.

Even though persons seeking to intervene on the settlement of a decree were not parties and therefore cannot intervene in the court below, they may be entitled to be heard in this court concerning the decree in so far as it may operate prejudicially to their rights.

Where both parties have appealed, one from the decree entered on the mandate of this court and the other from denial of a motion to

modify such decree, as the whole decree is before this court the dismissal of the latter appeal would not limit its power and duty to pass on the questions raised by it; the proper practice is to consolidate the appeals.

The decision and mandate of this court in regard to a combination declared illegal under the Anti-Trust Act should not be interpreted as safeguarding one public interest by destroying another, or as making the movement of transportation freer in some channels by obstructing its flow in others.

The decision of this court in 224 U. S. 383, explained, and the decree entered by the court below on the mandate modified so as to recognize the right of the Terminal Company as an accessory to its strictly terminal business to carry on business exclusively originating on its lines, exclusively moving thereon, and exclusively intended for delivery on the same.

THE facts, which involve the construction of the mandate and decision in *United States* v. *St. Louis Terminal Association* as reported in 224 U. S. 383, and the effect to be given to such mandate and the further directions of this court in regard thereto, are stated in the opinion.

*Mr. Edward C. Crow* for the United States.

*Mr. H. S. Priest* and *Mr. T. M. Pierce* for St. Louis Terminal.

*Mr. George M. Block,* with whom *Mr. John F. Lee* was on the brief, for intervenors.

MR. CHIEF JUSTICE WHITE delivered the opinion of the court.

This case was decided April 22, 1912 (224 U. S. 383), and the question now is, Was due effect given to the mandate of this court? A clear understanding will come by the merest outline of some of the legal proceedings preceding and following that decision. The decree which was reversed was entered by a circuit court composed of four judges in accordance with the Expedition Act. The cir-

cuit courts having been abolished when the decision of this court was rendered, the mandate was directed to the appropriate district court. There the United States filed the mandate and asked an interlocutory decree giving the time fixed by this court to take the steps which were decided to be necessary to make the organization of the defendants a legal one under the Anti-Trust Act. The defendants presented a statement of what was proposed by them to be done in compliance with the decree of this court to accomplish the result stated, and over some objection on the part of the United States an interlocutory decree was entered which in many respects accepted as sufficient what was proposed to be done by the defendants. On the taking of those steps and after a full hearing of the parties the court announced its purpose to enter a final decree not following in some respects a proposed form of final decree suggested by the United States. Thereupon the United States by petition for prohibition filed in this court asserted the entire want of jurisdiction in the court as constituted to entertain the enforcement of the mandate, as that could only be done by a court composed like the one which had rendered the judgment, that is, one composed under the Expedition Act. The prohibition was granted (226 U. S. 420), and jurisdiction to enforce the mandate was assumed by a court of three circuit judges sitting in the district court in pursuance of the Expedition Act. In that court after a hearing as to a proposed interlocutory decree and as the result of steps taken by the defendants to comply with the decision of this court which were deemed sufficient for that purpose, a final decree was entered on March 2, 1914. This decree was objected to by the United States because of the insufficiency, at least in form, of the steps taken by the defendants for the purpose of complying with the decree of this court and of the failure by the court below to insert in the decree various clauses suggested by the United

States and which it was insisted were necessary to give effect to the mandate of this court. For these reasons the United States on March 27, 1914, appealed and such appeal is now before us and constitutes No. 452 referred to in the caption.

The day after this appeal (March 28) the defendants moved to modify the decree by striking out the first paragraph on two grounds: First, because it referred to the Terminal Company as illegally organized in violation of the Anti-Trust Act, although under the supervision and approval of the court such steps had been taken as were directed by this court to remove all objection to the organization of the Company. Second, because the restrictions imposed on the business which the Terminal Company might lawfully do, were susceptible of being construed as forbidding the Company to carry on as ancillary to its strictly terminal work a transportation business originating upon one part of its line and destined exclusively to other points on such line. And the necessity of not prohibiting the Company from doing such work, the petition to modify asserted, was shown by the fact that "on account of the necessary extent of its tracks, covering an area of seventy-five to one hundred square miles, it is frequently called upon to take traffic from one point on its line to another point on its line, completing the entire movement on its own tracks." In addition the petition to modify alleged as follows:

"As an illustration: The Terminal Association operates in the early morning and late in the afternoon some trains to transport laborers engaged in industrial factories from Granite City, Illinois, to the different stations on its line in St. Louis, Missouri. This it is prohibited from doing under the decree.

"Another illustration: Many factories are located upon the Terminal Association's tracks on both sides of the Mississippi river. Under this order the defendant, Ter-

minal Association, would be restrained from accepting either raw material or finished products shipped from one such factory to another, although it could, with great convenience to the public, render such service."

At about the same date petitions to be allowed to intervene were filed on behalf of the Evens & Howard Fire Brick Company, Union Sand and Material Company and fifty-three others, all based upon the ground that the petitioners would suffer great injury by the serious loss occasioned to their business or the destruction thereof which would arise from forbidding the Terminal Company to engage in transportation moving exclusively from one point on its line to another point on its line. Some of these petitions alleged that the raw material was prepared at one point and the manufactured product made by using the raw material at another and that consequently an impossibility of continuing business would result from the inability to transport from one place to another. All these petitions prayed a modification of the order so as to make it clear that it did not forbid the Terminal Company as an incident to its purely terminal business to carry on the business in question. On June 20 the petition of the Terminal Company to modify and the petitions of the various parties to be allowed to intervene and praying a modification came on for hearing; the United States opposing the allowance of all. In support of its petition affidavits were filed by the Terminal Company showing the movement of many thousands of cars annually in the business referred to and giving the names of very many of those concerned in the movement. The prayer of the Terminal Company for a modification was refused without passing on its merits, the court expressly holding that it had no jurisdiction to do so, as the previous appeal taken by the United States from the final decree had transferred the case to this court. The petitions of intervention of the other parties over the objection of the United States

were permitted to be filed, but after filing, the prayer to modify was also in each of said cases denied on the ground that the court was without jurisdiction because of the appeal taken by the United States. From this decree all the defendants to the original suit appealed and the record referred to in the caption as No. 572 is the one embracing such appeal.

In this court the Evens and Howard Fire Brick Company and the Union Sand & Material Company have filed a petition praying leave to be allowed here to intervene to ask a modification of the decree so as to make it clear that it does not forbid the Terminal Company from engaging as an incident to its terminal business in transportation movements beginning and terminating exclusively on its own lines, the prayer being supported by statements concerning the situation and the alleged injury which would be suffered by prohibiting such business as set out in the petitions to intervene and modify filed in the court below.

The challenge by the United States of the right to hear the intervening petitioners is without merit, since even although the petitioners were not parties, they are entitled to be originally heard concerning the settlement of the decree in so far as it might operate prejudicially to their rights.

A motion made by the United States to dismiss the appeal taken by the defendants in No. 572 is also without merit. The duty of the court below was but to execute the mandate of this court, and every controversy between the parties concerning the discharge by the court below of its duty was open for this court to examine either originally, if essential, or as the result of an appeal by one of the parties, or by way of assertions of right made by the other party as an appellee even in the absence of a cross-appeal,—a result inevitably arising from the fact that both parties, so far as the settlement of the decree

of this court was concerned, were in this court and endowed with the capacity to invoke its action for the proper shaping and execution of the decree, either by original proceeding or in any other appropriate form. *Perkins* v. *Fourniquet,* 14 How. 328; *Re Sanford Fork & Tool Co.,* 160 U. S. 247; *In re Potts,* 166 U. S. 263. As under these conditions the dismissal of the appeal would in no way limit the power and duty to pass upon the questions raised on the appeal, we think the motion to dismiss ought not to prevail and that the better practice is to consolidate the appeal of the defendants in No. 572 with the appeal taken by the United States in No. 452 and treat the cases as one for the purposes of settling the questions raised by both parties. In doing this we shall also dispose of the contentions arising on the petition of intervention, since the right to modify the decree which the intervenors assert is precisely coterminous with the claim made by the defendants to modify. In saying this we do not overlook a contention of the defendants with which the intervenors are not concerned as to error committed in qualifying the defendants as an illegal combination although by complying with the requirements exacted by the decision of this court they were no longer subject to be so qualified. But we treat that subject as not in controversy because we are of the opinion that the contention concerning it rests upon a wholly unwarranted criticism of a mere form of expression in the decree, unwarranted because on its face the decree unmistakably demonstrates the contention to be absolutely devoid of all merit.

The errors of which the United States complains are stated in ten propositions, but if consideration of the subject embraced in the ninth be postponed to be disposed of in connection with the complaint of the defendants as to the right to a modification of the first paragraph of the decree because of the influence which the reasoning applicable to the one will have on the other, we think every

possible contention embraced in the assignments may be briefly disposed of by a few general considerations common to them all.

To afford an opportunity for the making of the necessary agreements and contracts curing the vices which the decisions of this court found to exist in the organization of the Terminal Company and to the end that when so made clean the Company might continue its existence and operations subject to the safeguards provided in the opinion of this court, it was commanded by the mandate that the case be "remanded to the District Court, with directions that a decree be there entered directing the parties to submit to the court, within ninety days after receipt of mandate, a plan for the reorganization of the contract between the fourteen defendant railroad companies and the Terminal Company, which we have pointed out as bringing the combination within the inhibition of the statute"; this being followed by a statement of what was required embraced under seven general headings which are in the margin,[1] followed by the direction that "Upon

---

[1] "First. By providing for the admission of any existing or future railroad to joint ownership and control of the combined terminal properties, upon such just and reasonable terms as shall place such applying company upon a plane of equality in respect of benefits and burdens with the present proprietary companies.

"Second. Such plan of reorganization must also provide definitely for the use of the terminal facilities by any other railroad not electing to become a joint owner, upon such just and reasonable terms and regulations as will, in respect of use, character and cost of service, place every such company upon as nearly an equal plane as may be with respect to expenses and charges as that occupied by the proprietary companies.

"Third. By eliminating from the present agreement between the Terminal Company and the proprietary companies any provision which restricts any such company to the use of the facilities of the Terminal Company.

"Fourth. By providing for the complete abolition of the existing practice of billing to East St. Louis, or other junction points,

failure of the parties to come to an agreement which is in
substantial accord with this opinion and decree, the court
will, after hearing the parties . . ." dissolve the
combination. The contention of the United States which
is fundamental in the sense that it is involved in or at
least gives color to all the propositions insisted upon, is
that the court below should have directly proceeded to
apply the sanction stated in the mandate in disregard of
all its other directions because the combination had so
failed to comply with such other requirements as not to
be entitled to the benefits which would have arisen from
complying with them and therefore had subjected itself
to immediate dissolution as an illegal combination. The
premise is that the word "parties" in the mandate em-
braced not solely the parties to the combination, but the
parties to the suit and therefore included the United
States. From this the argument proceeds that as below
neither for the purposes of the interlocutory decree nor
in any other step was the United States invited to become

and then rebilling traffic destined to St. Louis, or to points be-
yond.

"Fifth. By providing for the abolition of any special or so-called
arbitrary charge for the use of the terminal facilities in respect of traffic
originating within the so-called one hundred mile area, that is not
equally and in like manner applied in respect of all other traffic of a
like character originating outside of that area.

"Sixth. By providing that any disagreement between any company
applying to become a joint owner or user as herein provided for and the
Terminal or proprietary companies which shall arise after a final decree
in this cause, may be submitted to the District Court, upon a petition
filed in this cause, subject to review by appeal in the usual manner.

"Seventh. To avoid any possible misapprehension, the decree should
also contain a provision that nothing therein shall be taken to affect
in any wise or at any time the power of the Interstate Commerce Com-
mission over the rates to be charged by the Terminal Company, or the
mode of billing traffic passing over its lines, or the establishing of joint
through rates or routes over its lines, or any other power conferred by
law upon such Commission."

one of the parties entering into contracts or agreements for the purpose of curing the defects, therefore there was a disregard of the condition precedent to the right to remove the defects, and the duty to apply the penalty of dissolution automatically arose.  But this argument even upon the assumption of ambiguity in the text assumes that this court recognized that there was a right to cure the defects but deprived of all power to do so by subjecting the exercise of the right to a condition wholly beyond the will of the parties to the combination.  There is, however, not the slightest ambiguity in the mandate giving support to the consequences deduced from it, as the parties referred to plainly embrace only the parties to the agreement from which the combination resulted and directed them to become parties to the new agreement required to make the combination legal by removing the illegal clauses.  That this was the purpose of the decision so plainly results from the opinion and mandate as to leave no room for dispute to the contrary.  But if there were any opening for controversy, the meaning of the mandate has been previously so explicitly pointed out in this case as to conclude the question.  Thus in passing upon the application for prohibition made by the United States to restrain the conduct of the proceedings to enforce the mandate in a district court presided over by a district judge the nature of the duty involved in enforcing the mandate arose for decision, and it was said:

"While it is true that the mandate of this court gave certain specific directions as to the scope and character of the decree to be entered, it afforded an opportunity to the defendants to submit a plan in order to carry out the decree and gave to the United States an opportunity to be heard in opposition to that plan, and left to the court a serious and important duty to be discharged in any event and especially in case of controversy on the subject." (226 U. S., *supra*, p. 425.)

The want of foundation for the proposition relied upon disposes of all the assigned errors except the one the consideration of which we previously postponed because they all in a greater or less degree depend upon such proposition and to the extent that they do not, they are devoid of all merit for the following reasons: (a) Because the interlocutory decree was in strict compliance with the mandate; (b) because the contracts and agreements executed by the parties to remove the causes of illegality and which were approved by the court were adequate for that purpose; (c) because when the conception that the Government was a party upon whom rested the responsibility of agreeing to contracts modifying the terms of the combination is put out of view, we are of opinion there is no merit in the contention that certain forms of proposed contracts submitted for approval by the Government should have been sanctioned by the court, as such contracts were wholly unnecessary in view of the sufficiency of those executed by the parties and which were approved; (d) because after a careful scrutiny of the record we are of the opinion that in every material step taken by the court below concerning both the interlocutory and final decree ample opportunity was afforded to all the parties to be heard, careful consideration was evidently given to the matters to be decided and a full compliance both in form and substance with the mandate resulted from the final decree unless error inheres in the two propositions, urged one by the defendants and the other by the United States, which we now come to dispose of.

It may not be disputed that the clause of the first paragraph of the decree which is in the margin [1] pointing

[1] "1. The Terminal Railroad Association of St. Louis is an unlawful combination contrary to the Anti-Trust Act of July 2, 1890 (26 Stat. 209), when it and the various bridge and terminal companies composing it are operated as railroad transportation companies. The combination may, however, exist and continue as a lawful unification of ter-

out the character of the business which the Terminal
Company as reorganized was authorized to pursue is
susceptible of the construction that the right was excluded
to do anything but a terminal business in the narrow
sense and therefore did not permit the company to carry
on as ancillary to its terminal business a transportation
business even although originating and terminating on its
lines.  This being true, we are of opinion, despite the con-
tentions of the United States to the contrary, that the
provision in the decree on that subject did not give proper
effect to the mandate of this court and should be qualified.
so as to recognize the right to do in connection with the
terminal business proper such transportation business as
originates and terminates on the lines of the Terminal
Company for the following reasons: Because not to so
decide would lead inevitably to the conclusion that the
decision of this court contemplated safeguarding one pub-
lic interest by destroying another and in effect proposed
making the movement of transportation freer in some
channels by absolutely obstructing all possibility of its
flow in others; and moreover because it assumes that the
decision proposed to cure the defects in the organization
of the combination which caused it to be in conflict with

---

minal facilities upon abandoning all operating methods and charges as
and for railroad transportation and confining itself to the transaction
of a terminal business such as supplying and operating facilities for the ·
interchange of traffic between railroads and to assist in the collecting
and distributing of traffic for the carrier companies, switching, storage
and the like, and modifying its contracts as herein specified.

"An election having been made to continue the combination for
terminal purposes the defendants are therefore perpetually enjoined
from in any wise managing or conducting the said Terminal Railroad
Association or any of its constituent companies and from operating
any of the properties belonging to it or its constituents otherwise than
as terminal facilities for the railroad companies using the same, and
from making charges otherwise than for and according to the nature
of the services so lawfully authorized to be rendered."

the Anti-Trust Act by commanding the abstention from the prosecution of business which otherwise under the law there would have been a duty to carry on, thus virtually seeking to remove one cause of illegality in a combination by substituting another. The contention that the Terminal Company and the combination which it embodied was not dissolved and was permitted to continue in business solely because if allowed to continue it would be obliged to confine itself to terminal business in the strict sense and therefore should not be permitted to now do other than purely terminal work rests upon a misapprehension of the conditions. The suit to dissolve was largely defended upon the ground that the combination was formed for terminal purposes and that to combine for the purpose of obtaining facilities of that character was not in conflict with the Anti-Trust Act. In disposing of the case the correctness of this contention in the abstract was conceded but as it was found that the geographical situation, the area over which the Terminal Company operated and the business which it carried on, in other words its general environment, took it out of the conceded abstract general rule, it was decided that the combination if it wished to continue in business must execute certain agreements for the benefit of the public modifying the terms under which it was organized. The proposition therefore now is that although the duty to execute agreements arose and its performance was compelled because the Terminal Company was not to be dealt with in the light, abstractly speaking, of a strictly terminal organization, nevertheless upon the execution of the agreements its rights are to be measured upon the contrary assumption. As these considerations in our opinion demonstrate that the decree should be modified by permitting the carrying on by the company as incidental to its terminal business of a transportation business originating exclusively on its own line moving thereon and terminating

thereon, a direction to modify the decree in that respect must necessarily follow.

The subject of the ninth assignment of errors, upon. which the United States most relies, relates to the fifth clause in the mandate containing a direction for the "abolition of any special or so-called arbitrary charge for the use of the terminal facilities in respect of traffic originating within the so-called 100-mile area, that is not equally and in like manner applied in respect of all other traffic of a like character originating outside of that area."

As the court below on this subject did nothing more than embody in its decree the provision of the mandate, the contention is that error was committed because the decree failed to expound the language of the mandate. Indeed in the argument it was insisted that to properly give effect to the mandate there should have been inserted in the decree an express provision absolutely controlling or regulating for the future charges which the Terminal Company might make. But to have given effect to this view would have caused the decree to be plainly repugnant to the provisions of the Act to Regulate Commerce and contrary to the exercise by the state authorities of their power over charges of the Terminal Company in so far as the jurisdiction of such authorities may have extended. The flagrant repugnancy to the Act to Regulate Commerce which would have resulted if the decree as asked had been granted will become more manifest when it is considered that the insistence was, as pointed out by the court below in its opinion, that there should have been a provision in substance so fixing and perpetuating for the future rates on traffic coming into East St. Louis from the zone mentioned in the mandate as to compel the commodities transported to East St. Louis to be carried from there across the river to their point of destination in St. Louis without any transportation charge whatever,—a direction which it is apparent would have

involved, if given, a disregard not only of all the regulations concerning rates established under the Act to Regulate Commerce, but also, it may be, the prohibitions of that act concerning preference and discrimination. This condition is not escaped by the suggestion that such limitations if imposed would not have been in substance repugnant to the Act to Regulate Commerce since, as the rate from which the repugnancy would arise would only apply to business done by the combination and as the combination would have to be dissolved because of the repugnancy, therefore the repugnancy would cease to exist from the very fact that it arose. But this argument only restates the contention concerning another aspect of the case which we have previously disposed of and serves to emphasize the view that it is impossible to conceive that the decision of this court recognized the right of the Terminal Company to continue to exist provided certain features in its organization which were in conflict with the Anti-trust Act were removed, and yet at the same time provided that when such features were removed the right to continue should be lost by the fact of its exercise. The particular expression of disapproval of the form of rate stated in the clause relied upon could only have been based upon one of two conceptions: First, the intention if such a charge was attempted to be exacted under the future operation of the company which was permitted, to lay down a rule forbidding such a charge in the future by the Terminal Company and thereby expressing an opinion upon and controlling a subject plainly beyond the primary sphere of the judicial power and exclusively within the original cognizance of the Interstate Commerce Commission under the terms of the Act to Regulate Commerce; or second, as there was contention in the record as to whether such a form of rate was charged, and if it was, as to its legality, the expressions on that subject were used only to exclude all inference that the

judicial recognition of the right of the Terminal Company
to continue in business on compliance with exactions
which were required carried with it an implication of
approval also to continue to exact the rate in question
if it was being exacted, thus excluding all room for the
contention that the provisions of the Act to Regulate
Commerce were in any way interfered with. That the
expressions relied upon did not have the first meaning
and therefore solely had the second, so clearly results
from the context of the mandate, that is, from its seventh
paragraph, as to need no further consideration of the
subject. The clause is as follows:

"Seventh. To avoid any possible misapprehension,
the decree should also contain a provision that nothing
therein shall be taken to affect in any wise or at any time
the power of the Interstate Commerce Commission over
the rates to be charged by the terminal company, or the
mode of billing traffic passing over its lines, or the estab-
lishing of joint through rates or routes over its lines, or
any other power conferred by law upon such Commission."

Comprehensively considering and once again weighing
all the contentions pressed upon us by the United States,
we are of the opinion they all in last analysis rest upon the
following contradictory assumptions: (a) that the decision
of this court destroyed one set of public rights upon the
theory of protecting another set; (b) that it proposed to
correct an abuse of one statute by conferring authority
to violate another; (c) that while exerting the authority
of enforcing one statute the power was assumed of setting
aside the provisions of another statute. On the contrary,
when the confusion upon which these views rest is dis-
regarded we are of the opinion that the decision involved
none of these contrarieties or conflicts since in the public
interest and to open wide the avenues of commerce and
make them free to the enjoyment of all, it commanded
the correction of conditions impeding that result and

which were in conflict with the Anti-Trust Act, thus bringing the assailed combination under the law of the land and leaving it to be controlled by such law.

It follows from what we have said that the decree below giving effect to the mandate of this court will be modified so as to recognize the right of the Terminal Company as an accessory to its strictly terminal business to carry on transportation as to business exclusively originating on its lines, exclusively moving thereon and exclusively intended for delivery on the same and in other respects the decree will be affirmed.

*Modified and affirmed.*

MR. JUSTICE HOLMES and MR. JUSTICE MCREYNOLDS took no part in the decision of this case.