## CALIFORNIA CO-OP. CANNERIES v. UNITED STATES et al.

(Court of Appeals of District of Columbia. Submitted April 22, 1924. De-
cided June 2, 1924.)

No. 4071.

1. **Monopolies ⬅24(2)—One having contract to furnish supplies to defendant en-
titled to intervene and question validity of decree restraining use of his goods.**

One having a contract with a defendant in a suit for violation of Anti-
Trust Laws (Comp. St. § 8820 et seq.) to furnish it with supplies *held*,
under equity rule 15 of the Supreme Court of the District of Columbia,
entitled to intervene and raise question of validity of a consent decree,
which restrained that defendant from handling goods of type mentioned
in contract.

2. **Appeal and error ⬅173(6)—Question not raised below not before Court of
Appeals.**

Where validity of a consent decree is not questioned in the court be-
low by any parties, that question is not before the Court of Appeals.

3. **Courts ⬅332—Equity rule of Supreme Court of District of Columbia as to
intervention held not in conflict with federal equity rule.**

Equity rule 15 of the Supreme Court of the District of Columbia, pro-
viding that any one claiming an interest in litigation may be permitted
to assert his right by intervention, responds to court's power to establish
rules as provided by Act April 19, 1920, and is not in conflict with federal
equity rule 37.

4. **Equity ⬅114—Intervention should not be refused, where party is otherwise
without remedy to protect valuable rights.**

Where party seeking intervention shows such an interest in litigation
as to involve protection of valuable rights, and is without remedy else-
where, a court should not refuse leave to intervene; the chancellor's
discretion not being absolute.

5. **Constitutional law ⬅309(1)—Private rights may not be affected, in absence of
notice and opportunity to be heard.**

Before private rights may be affected by judicial decree, party in in-
terest must have due notice and opportunity to be heard; otherwise,
there is a denial of due process of law.

6. **Monopolies ⬅24(2)—Decree declaring combination illegal will not be sus-
tained, if it destroys public interest.**

A decree declaring a combination illegal under Anti-Trust Act (Comp.
St. § 8820 et seq.) will not be sustained, if its effect is to safeguard one
public interest by destruction of another.

Appeal from the Supreme Court of the District of Columbia.

Suit by the United States against Swift & Co. and others. From a
decree refusing to grant leave to intervene, the California Co-operative
Canneries appeals. Decree reversed as against appellees other than the
United States, and cause remanded, with mandate that petitioner be
allowed to intervene, and such further proceedings be had as are nec-
essary to determine the issues raised by its petition.

Frank J. Hogan, of Washington, D. C., for appellant.

Peyton Gordon, Herman J. Galloway, Harry W. Van Dyke, Charles
A. Douglas, and Conrad H. Syme, all of Washington, D. C., Mac
Asbill, of Atlanta, Ga., and William C. Breed, of New York City, for
appellees.

Edgar Watkins, of Atlanta, Ga., for American Wholesale Grocers'
Ass'n.

Before VAN ORSDEL, Associate Justice, and SMITH and BAR-BER, Judges of the United States Court of Customs Appeals.

VAN ORSDEL, Associate Justice.  On February 27, 1920, the Attorney General of the United States filed a bill of complaint in the Supreme Court of the District of Columbia against what is commonly known as the "Big Five Meat Packers," designated in the following groups: The Swift group, the Armour group, the Morris group, the Cudahy group, and the Wilson group.  On the same day the defendants filed their respective answers; also there was filed a stipulation for a consent decree, which was entered in accordance with the stipulation.

The bill of complaint alleged violations of the Anti-Trust Laws (Comp. St. § 8820 et seq.) by the defendants.  The answers denied such violations.  The decree contained the following statement:

"The several defendants having accepted service of process and having appeared and filed answers to the petition. which answers are on file in the office of the clerk of this court, and the parties having this day entered into a stipulation in this action, which stipulation is on file in the office of the clerk of this court, and from which it appears, among other things, that, while the defendants and each of them maintain the truth of their answers and assert their innocence of any violation of law in fact or intent, they nevertheless, desiring to avoid every appearance of placing themselves in a position of antagonism to the government, have consented and do consent to the making and entry of the decree now about to be entered, without any findings of fact, upon condition that their consents to the entry of said decree shall not constitute or be considered an admission, and the rendition or entry of said decree, or the decree itself, shall not constitute or be considered an adjudication, that the defendants or any of them have in fact violated any law of the United States."

The decree enjoins the defendants from conspiring or combining to restrain trade or commerce, or monopolizing, or attempting, through combination or conspiracy, to monopolize, trade or commerce.  Defendants are enjoined from using their distributive facilities, including branch houses, route cars, auto trucks, etc., in the handling, dealing in, jobbing, or distribution of certain products unrelated to the meat-packing industry, and generally included in the wholesale grocery lines. These articles are classified in the decree as fresh canned, dried, or salted fish, fresh dried or canned vegetables, except in combination with meats, fresh crushed, dried, evaporated, or canned fruits, confectioneries, syrups, soda fountain supplies, molasses, honey, jams, jellies, and preserves, spices, sauces, condiments, relishes, coffee, tea, chocolate, cocoa, nuts, flour, sugar, rice, bread, wafers, crackers, biscuits, cereals, grain, grape juices, and 25 classes of manufactured products enumerated under the head of miscellaneous articles.

The defendants are further enjoined from manufacturing, dealing in, transporting, or distributing, either in domestic or export trade, or owning any stock or interest in any corporation or firm engaged in manufacturing, dealing in, or distributing these unrelated commodities, from operating retail meat markets, except at their packing plants, and those maintained for the accommodation of their own employees, and from owning any capital stock or interest in public cold storage ware-

houses, except cold storage plants at the stockyards where packing plants are conducted. Defendants are required to divest themselves of all ownership or interest in any public stockyard, market company, stockyard terminal railroad, market newspaper, cold storage warehouses, or retail meat markets, and to cease manufacturing or transporting the unrelated commodities, except as common carriers, to discover to the government fully, respecting the conduct of their affairs, as required under the decree, and to submit to the inspection of the Attorney General their books, records, correspondence, or other documents, in so far as the same refers to any alleged violation of any of the terms of the decree. The decree further provides that all sales, transfers, or disposition, respecting any of the matters enjoined by the decree, made by any of the defendants for a period of five months prior to the entry thereof, "shall be submitted by the defendants to the court for its investigation and determination as to whether the same were made in accordance with the spirit and purpose of this decree," in the same manner as if such transactions had occurred subsequently to the entry of the decree. It then provides:

"That jurisdiction of this cause be, and is hereby, retained by this court for the purpose of taking such other action, or adding at the foot of this decree such other relief, if any, as may become necessary or appropriate for the carrying out and enforcement of this decree, and for the purpose of entertaining at any time hereafter any application which the parties may make with respect to this decree."

[1] It appears that subsequently the National Wholesale Grocers' Association and the Southern Wholesale Grocers' Association applied for leave to intervene for the protection of their respective interests, and especially to be heard upon all hearings of any motions or proceedings seeking to change, weaken, or otherwise modify the consent decree. Leave to intervene was granted, without prejudice to prior proceedings, on the same date their intervening petitions were filed.

On April 19, 1922, appellant, California Co-operative Canneries, filed its petition for leave to intervene, and also to be heard as amicus curiæ. The petition is based upon a contract between appellant, under its former name of Producers' Warehouse Company, and Armour & Co., whereby Armour & Co. contracted to purchase all of the California canned fruit required in its business, except what it purchased from the California Growers' Association under a separate contract with that association. The contract provided the place of delivery of the fruits, that the price to be paid should be based upon the prices used by the California Packing Corporation in confirming its sales to the trade generally, thus throwing itself in competition with the California Packing Corporation, as to its selling prices. The contract in detail sets out the manner of payment, discounts, labeling of goods, adjustment of controversies as to quantity and condition of products, quality and grade of goods, and then provides that:

"In case governmental action materially interferes with the performance of this contract by second party (Armour & Co.), then and in that case it shall have the right to cancel and terminate this agreement by giving 60 days' written notice to first party [appellant company] of its intention so to do, and shall not be held liable for any loss resulting therefrom."

It is averred in the petition that after the entry of the decree Armour & Co. notified appellant that it could not further keep the contract by reason of the decree, and declined to proceed further with the performance thereof. The petition sets out that under this contract, prior to the entry of the decree, Armour & Co. purchased approximately 52 per cent. of appellant's entire output of canned fruit, amounting to $4,000,000 per annum. It is alleged that through this method of dealing there was greater profit to the producer and smaller cost to the consumer, due to the superior system of distribution of fruit products possessed by Armour & Co. It is averred that the decree was passed without any notice whatever to appellant, or opportunity to be heard in opposition thereto, and that, as soon as appellant became cognizant of the entry of the decree, it actively endeavored, in various ways and before various tribunals and officials, to secure a vacation or modification of the decree, in so far as it affects appellant's rights.

The petitioner assails the decree as void for want of jurisdiction or power apparent on the face of the record, and insists that its direct effect is to restrict, and not to promote competition in, the distribution of fruit commodities; that its whole effect is to create a monopoly in favor of the Wholesale Grocers' Associations, particularly the Southern and National Wholesale Grocers' Associations, and that the monopoly thus created is destructive of appellant's business, the business of farmers' organizations, the business of general stores, mail order houses, co-operative buying by retailers, meat packers, and business houses conducting both wholesale and retail business.

Appellant, through its petition, moved to set aside the entire decree, on the ground that the court had no jurisdiction of the cause, and had no jurisdiction to render the decree, and further moved the court to set aside and vacate the portions of the decree relating to the unrelated commodities, on the ground of lack of jurisdiction to render the decree with respect to such commodities, and on the further ground that the decree is economically unsound and unjust, and in violation of the Anti-Trust Laws.

This appeal, both in brief of counsel and presentation at bar, has gone far beyond its scope. The government is here strenuously upholding the validity of the consent decree. Counsel for the Grocers' Associations are here likewise contending for the validity of the decree. Counsel for the packers are here contending that the decree is a nullity. The Farmers' National Council and the Peoples' Reconstruction League are here by counsel opposing the right of appellant to intervene. Appellant is here, not only claiming the right of intervention, but assailing the consent decree as totally void, and certainly so in so far as it affects its interests.

The court, in its order denying the right of appellant to intervene, sustained the power of the court to enter the consent decree, notwithstanding the declaration of defendants, contained therein, of the truth of the allegations of their answers, holding that, as none of the parties to the suit were before the court attempting to set aside the decree, the only question to be determined was the right of appellant to intervene, and that—

"if the decree was entered into by Armour & Co. for the purpose of preventing the fulfillment of any legal obligations it might owe to the Canneries under it, an action at law in the proper forum would afford relief."

[2] Inasmuch as the validity of the consent decree was not questioned in the court below by any of the parties to the action, that question is not before us. The packers are in no position in this proceeding to assail its validity. They made no attempt in the court below, by bill of review or otherwise, to have corrected what they now assert to be errors in the original decree; hence there is no order from which to appeal. Their appearance, however, may be accepted as amicus curiæ, and with no other effect. The mere statement of their lack of substantial foundation upon which to stand demonstrates the fallacy of their position.

The only order appealed from, and the one to which our attention is limited, is the refusal to grant appellant leave to intervene. What effect our ruling upon that question may have later, in the event we are called upon to determine the validity of the consent decree, it is unnecessary to consider at this time.

We think, in any event, the holding of the court to the effect that, if Armour & Co. consented to the decree for the purpose of evading its legal obligations to the Canneries company, an action at law would afford proper relief, is erroneous. If the decree was made for the purpose of enabling Armour & Co. to avoid its contractual obligations with appellant, then the court was used as an instrument to perpetrate a fraud, and the decree would have no legal force. On the other hand, if we assume, as we must, that the decree was intended to restrain Armour & Co. from doing the things therein enumerated, the effect thereof is to deprive the appellant of its rights under the contract without first giving it a day in court.

[3] Coming to the main question, equity rule 15 of the Supreme Court of the District of Columbia provides, among other things, that "any one claiming an interest in the litigation may at any time be permitted to assert his right by intervention." This rule, though somewhat broader than federal equity rule 37, is not in conflict therewith, and responds to the power of the court to establish rules regulating pleading, practice, and procedure, as provided by Act of Congress of April 19, 1920, 41 Stat. 555.

Appellant's petition, in its averments, discloses that its members have an interest in this suit similar to the general public; also an interest due to the effect which the consent decree has upon industry in which appellant company is engaged, as well as the interest growing out of the destruction of its contract due to Armour & Co. consenting to the original decree. It is not clear, without substantiating proof, that appellant's petition for intervention would justify the vacation of the consent decree, or merely its modification to the extent of permitting the distributive facilities of Armour & Co. to be used for moving the unrelated commodities included in appellant's output.

It appears that on November 17, 1921, appellant petitioned the Attorney General for a modification of the consent decree in this cause, which resulted in the appointment of an interdepartmental committee

of three persons, one selected by the Attorney General, one by the Secretary of Agriculture, and one by the Secretary of Commerce, to conduct a hearing as to the matters involved in appellant's petition. The report, which was approved by the Attorney General, declared the questions of so grave and far-reaching importance with respect to the unrelated commodities, and also affecting the entire decree, and of such vital interest to the public, that they should be decided by the court which entered the decree, and recommended that the application of appellant be presented in the first instance to the court which entered the original decree.

[4] In view of this situation, it is clear that appellant should have been permitted to intervene. The discretion of the chancellor in permitting or refusing intervention is by no means absolute. If the party seeking intervention shows such an interest in the litigation as to involve the protection of valuable rights and is without remedy elsewhere, the court should not refuse leave to intervene. Gaines v. Clark, 51 App. D. C. 71. In United States Trust Co. v. Chicago Terminal Tr. R. Co., 188 Fed. 292, 110 C. C. A. 270, the court concisely stated the rule as follows:

"Applications for leave to intervene are of two kinds. In one, the applicant has other means of redress open to him, and it is within the court's discretion to refuse to incumber the main case with collateral inquiries. In the other, the applicant's claim of right is such that he can never obtain relief, unless it be granted him on intervention in the pending cause. In this latter class the right to intervene is absolute, and the rejection of the petition is a final adjudication, and therefore appealable."

A case strongly in point is that of United States v. Terminal Railroad Association, 236 U. S. 194, 35 Sup. Ct. 408, 59 L. Ed. 535. Suit was brought under the Anti-Trust Law, and a decree entered against defendants. On appeal to the Supreme Court the cause was remanded to enforce the provisions of the Sherman Anti-Trust Law. 224 U. S. 383, 32 Sup. Ct. 507, 56 L. Ed. 810. Modification of the original decree was sought in the court below to permit the Terminal Railroad Association to carry on, as ancillary to its principal business, a transportation business. Petitions of intervention were filed by a large number of parties, asserting that they would suffer serious loss if the Terminal Association was forbidden to engage in transportation business. Modification of the decree was prayed, so as to permit the Terminal Association, as an incident of its business, to carry on such transportation. The petitions for intervention were opposed by the United States, but were permitted by the court to be filed over the objection of the government. The prayer for modification in each instance was denied. When the case again reached the Supreme Court, two of the intervening petitioners sought leave to be allowed to intervene to ask a modification of the decree to the extent of permitting the Terminal Association to engage in transportation business. On the right of intervention the court said:

"The challenge by the United States of the right to hear the intervening petitioners is without merit, since, even although the petitioners were not parties, they are entitled to be originally heard concerning the settlement of the decree in so far as it might operate prejudicially to their rights."

The court, overruling the motion of the government to dismiss the appeal, proceeded to consider the matters arising on the petitions of intervention. When an equity court, in the exercise of its jurisdiction, makes a decree which, in determining the rights of the parties, enjoins one of them from carrying out a lawful contract with persons not parties to the suit, and gives effect to a cancellation clause of such contract, it is the duty of the court, if it retains jurisdiction of the case, as in this instance, to permit the intervention of the contracting party, who is not a party to the original suit, and who is detrimentally affected by the decree, and to give him an opportunity to be heard.

[5] As we have observed, without intervention appellant would be left remediless. Valuable contract rights have been stricken down, without notice to appellant or an opportunity to be heard. It is a fundamental principle of our jurisprudence that, before private rights may be affected by judicial decree, the party in interest must have due notice and an opportunity to be heard. Upon the strict observance of this principle rests the security of the citizen in the enjoyment of life, liberty, and property; otherwise, these rights could be divested without due process of law.

[6] It is not clear on just what theory the court below should permit the Grocers' Associations to intervene, and deny the right of intervention to appellant, as the interests of these parties seem to be diametrically opposed to each other. If the charge of appellant is true, that the wholesale grocers are using the decree against the packers to strengthen and build up a giant monopoly in their various and varied lines of business, there would seem to be demand for a searching inquiry as to whether or not the court is being used as an agency to restrain one monopoly and thereby promote, strengthen, and build up another. Clearly it is not the policy of the Anti-Trust Act to accomplish this result. Nor will the decree of the court below, declaring the packers' combination illegal under the Anti-Trust Act, be sustained, if its effect is to safeguard one public interest by the destruction of another. United States v. Terminal Railroad Association, supra.

The decree is reversed, with costs against appellees, other than the United States, and the cause remanded, with mandate that the appellant be allowed to intervene, and such further proceedings thereupon be had as are necessary to determine the issues raised by appellant's petition.