**NORFOLK AND WESTERN RAILWAY COMPANY, Plaintiff,**

v.

**CONTINENTAL GRAIN COMPANY, Defendant.**

**No. 78-517C(B).**

United States District Court, E. D. Missouri, E. D.

July 2, 1979.

Albert E. Schoenbeck, St. Louis, Mo., for plaintiff.

F. Wm. McCalpin, Kathianne Knaup, St. Louis, Mo., for defendant.

## MEMORANDUM

REGAN, District Judge.

This case involves the narrow issue of whether Continental Grain Company is liable to Norfolk and Western Railroad Company (N&W) under its tariffs for the switching charges of the Terminal Railroad Association (TRRA) in connection with 160 shipments of grain to Continental's grain elevator in East St. Louis, Illinois, during the period from 1975 through 1977.

Each of the shipments was made pursuant to a bill of lading signed by the shipper and plaintiff's agent. They contained the point of origin, the consignor and the destination. In each instance, the consignor was the seller of the grain which it tendered to N&W at a point along its line in Indiana or Illinois for transportation to and through Continental's elevator at East St. Louis.

Transportation includes delivery. The bills of lading showed N&W as the delivering carrier. However, inasmuch as Continental's elevator is not on N&W's line, the only way it could complete the delivery of the grain to the elevators pursuant to its bill of lading was by use of the TRRA. As the result, after the shipments moved along the N&W tracks to a certain point, they were then interchanged with the TRRA for delivery to Continental at its elevator which was located on TRRA tracks.

The TRRA serves the St. Louis-East St. Louis area as a terminal railroad, interchanging with all railroads in the St. Louis area. It is owned by twelve trunkline railroads, one of which is N&W. However, N&W has no control over TRRA's day-to-day operations, nor any veto power over TRRA's tariffs of switching charges.

For a background of the nature and function of the TRRA, it is instructive to read *United States v. Terminal Railroad Ass'n of St. Louis*, 224 U.S. 383, 32 S.Ct. 507, 56

L.Ed. 810 (1912), together with the opinion in 236 U.S. 194, 35 S.Ct. 408, 59 L.Ed. 535 (1915). The decree therein, as modified in the later case, limited the TRRA, to conducting a *strictly terminal* business (in which it acts as the agent of the railroad it serves), except that as ancillary to such terminal business it was permitted to carry on transportation as to business which exclusively *originated and terminated on its own lines.*

The TRRA operates and maintains terminal facilities in St. Louis and East St. Louis, and in connection therewith provided N&W with a terminal service (namely, completing delivery of the grain shipments to their East St. Louis destination), which N&W, as the line-haul carrier, had agreed to perform. Hence, the real question is not whether TRRA could charge *N&W* for its switching (terminal) services pursuant to a *TRRA* tariff, but rather whether, under the applicable *N&W* tariff, Continental was liable to N&W therefor.

The shipments in question moved under three N&W line-haul tariffs, 904–B, 975–A and 1047–B.

We first consider Tariffs 904–B and 975–A under which $13,689 is sought to be recovered. These tariffs do not contain any switching rates. The only rates given are line-haul rates. Each of these tariffs contains so-called omnibus rate and route clauses to the effect that the rates (and routes) named therein, "when applying to, from or *via* St. Louis, Mo. or *East St. Louis, Il.* will apply also via the TRRA." They also contained provisions respecting the non-absorption of switching charges in whole or in part of "connecting" lines or carriers.

The controversy is whether the switching charges for the delivery of the cars to defendant's East St. Louis grain elevator should have been fully absorbed by N&W under these tariffs. It is plaintiff's position that the TRRA is a "connecting" line or carrier within the purview of the tariffs,

the switching charges of which are not absorbed and are in addition to the line-haul rate. Defendant, on the other hand, urges that the TRRA was simply acting as a terminal company, the agent of N&W, in delivering the freight to Continental's elevator and not as a "connecting" line or carrier within the meaning of the tariffs.

Tariff 904–B became effective March 8, 1975. It was preceded by Tariff 904–A (effective October 9, 1972). Tariff 975–A became effective January 1, 1973. Its predecessor, Tariff 975, was in effect as of May 15, 1968. Both the predecessor tariffs contain the same omnibus rate and route clauses, and their provisions governing the applicable rates and absorption of switching charges were similar to those of the tariffs in suit.

Continental had been shipping grain by N&W (as well as by other railroads) to its East St. Louis elevator for some thirty years, including the period the predecessor tariffs had been in effect. However, although there had been no change in the language of the tariffs or in the way N&W complied with its contract to deliver the grain, no attempt had been made by N&W to collect the TRRA switching charges until the shipment of July 8, 1975. The evidence also demonstrates that other carriers with similar tariffs do not add TRRA switching charges to their line-haul rates in delivering grain to Continental's East St. Louis elevator.[1]

In construing railroad tariffs, as any other contract, all pertinent provisions must be considered together. "The construction should be that meaning which the words used might reasonably carry to the shippers to whom they are addressed, and any ambiguity or reasonable doubt as to their meaning must be resolved against the carriers." *United States v. Missouri-Kansas-Texas R. Co.,* 5 Cir. 1952, 194 F.2d 777, 778. See also *Penn Central Company v. General Mills, Inc.,* 8 Cir. 1971, 439 F.2d 1338, 1340–1341,

---

1. At one time, Missouri Pacific Railroad tried to impose such charges, but receded from that position.

setting forth the rules of construction generally adhered to by the courts.

We start with the well-settled premise, as noted supra, that ordinarily line-haul tariff rates include delivery, unless, of course, additional charges therefor are expressly set forth. In view of the explicit provision in the tariffs that both the routes and the line-haul rates of N&W when applying to East St. Louis will also apply via the TRRA, Continental could reasonably conclude that to the extent the TRRA was utilized by N&W as its agent to effect the East St. Louis delivery there would be no additional charge. And since the service performed by the TRRA in switching the cars for purpose of delivery was no more than a terminal service, we do not believe the charges therefor were additional to the line-haul rates.

■ Stated otherwise: In the only portion of these tariffs expressly referring to the TRRA, the carrier unequivocally stated that the rates (and routes) applied via the TRRA. Non-absorption of switching charges of other carriers in whole or in part was limited, by general language, to charges of "connecting carriers." The TRRA is nowhere referred to. In view of the fact that the TRRA cannot and does not carry on a *transportation* business (except solely on its own lines), we do not believe that its terminal switching services were those of a "connecting *carrier*."

N&W argues that the line-haul rates in the tariffs in question were "depressed" to meet competition of motor carriers and water carriers. They were of the "no frill" type in that they did not provide "transit privileges" of any kind. Continental does not question the right of N&W to eliminate such privileges. However, it is not disputed that if the *switching* charges were added to them, these no-frill rates would exceed the competitive rates of the other carriers. And, obviously, N&W's present contention respecting the "depressed" nature of its rates would have applied as well during the time the predecessor tariffs were in effect, years before it occurred to N&W to attempt to recover the TRRA switching charges. In

our judgment, N&W's claim that these rates did not include absorption of all switching charges is an afterthought not within its contemplation when the rates were set.

■ The general traffic manager, pricing and marketing, of N&W testified that the omnibus route and rate provisions were "intended" to apply only to "cross-Mississippi" movements, although they are not so limited and do not so state. He could not explain, however, why they had not been so interpreted prior to July 8, 1975. So, too, although the N&W tariff could have provided for non-absorption of the TRRA terminal switching charges as well as those of "connecting carriers," it did not do so. The witness conceded that the language was not "entirely clear," another way of stating that the tariffs were ambiguous.

In this situation, reasonable doubts as to the meaning of the tariffs must be resolved against N&W. This is particularly true in view of the uniform, long-continued construction of the tariffs by N&W (and other carriers) over a period of many years. See *Kansas City Southern Ry. Co. v. Kansas City Power & Light Co.*, D.C.Mo.1976, 430 F.Supp. 722, affirmed 8 Cir. 1977, 551 F.2d 1134.

We turn next to Tariff 1047–B, under which some of the shipments moved as to which $9,649.93 is claimed. This tariff, effective as of November 22, 1975, provides line-haul rates from origins in Illinois to East St. Louis "via N&W direct" in terms of distance in miles from point of origin to point of delivery between stations of N&W. It, too, states that "switching charges of connecting carriers will not be absorbed and will be in addition to the rates named" therein. Its predecessor, Tariff 1047, containing identical language respecting non-absorption of switching charges, was effective as of December 16, 1972. Obviously, neither Tariff contained an omnibus rate or route clause comparable to Tariffs 904–B or 975–A. Much of what we have said, in relation to these tariffs however, is equally applicable to Tariff 1047–B.

The bills of lading under this tariff also show N&W as the delivering carrier and the destination as Continental's East St. Louis elevator. It is clear that the line-haul rate included delivery to such destination. And inasmuch as N&W had no East St. Louis station, we hold that for purposes of effecting the agreed-upon delivery, the TRRA station must be considered a station of N&W. This is so, not because the TRRA is controlled by or is the alter ego of N&W which it is not, but because N&W in effect so contracted in the tariff and bill of lading.

As we view the facts, the TRRA is not a connecting *carrier* within the contemplation of Tariff 1047–B or its predecessor. By "carrier" is not meant a terminal railroad, but rather a transportation company such as is N&W. Cf. *State ex inf. Attorney General v. Terminal Ass'n of St. Louis*, 182 Mo. 284, 81 S.W. 395 (1904). The switching services performed by the TRRA were performed as a *terminal* company, not as *connecting* carrier. Although it is obvious that those services could not be performed unless there was a "connection" at the point of the switching, more than a mere connection is required to fill the requirement that the TRRA be a "connecting carrier."

For years, N&W has construed the language contained in the tariff as inapplicable to the switching charges of the TRRA, although the language of the tariff, the operations thereunder and the relationship of the parties were no different. This practical construction is entitled to weight.

We emphasize that the issue in this case is not whether N&W *could* have so worded its tariffs as to provide for the non-absorption of the switching charges, not merely of "connecting carriers" but also of the TRRA or other terminal company, if any. We are limited to the language actually employed and its reasonable construction. Inasmuch as the tariffs permit N&W to assess against the shipper only the switching charges of "connecting *carriers*", it follows that Continental is not liable to N&W for the switching charges of a terminal company.

The foregoing memorandum constitutes our findings of fact and conclusions of law. Judgment will be entered in favor of defendant.