**GENERAL ELECTRIC COMPANY,**
a Corporation

v.

The **UNITED STATES.**
No. 370–67.

United States Court of Claims.
July 16, 1969.
Reconsideration Denied Oct. 17, 1969.

Francis J. Robinson, Newtown Square, Pa., attorney of record, for plaintiff.

James A. Pemberton, Jr., Washington, D. C., with whom was Asst. Atty. Gen., William D. Ruckelshaus, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

COLLINS, Judge.

In the court's view of this case, the main issue for decision is whether, under the Limitation of Cost article [1] included in the instant cost-plus-fixed-fee contract, a contracting officer effectively exercised his discretion in favor of allowing overrun costs to the contractor, after General Electric failed to timely notify the Government of the overrun.

The pertinent peripheral facts, as found by the Armed Services Board of Contract Appeals [2] and disclosed by the record, are essentially unchallenged by the parties and can be summarized as follows:

The instant research and development contract, executed in January 1964, resulted from plaintiff's unsolicited proposal. It primarily required General Electric to design, fabricate, and test prior to delivery to the Government two "20MM Automatic Weapons Systems." The contracting Government agency was the Army Weapons Command, Rock Island Arsenal, Illinois. The total estimated cost of the contract (as modified and exclusive of a fixed fee of $37,300) was $510,874. Plaintiff claims to have exceeded this cost estimate by $23,934, the overage arising from field testing of the completed armaments.

As provided at page 2 of Appendix A of the contract, primary supervision and administration was delegated to the Boston Procurement District,[3] with techni-

1. "Article 2—Limitation of Cost

"(a) It is estimated that the total cost to the Government, exclusive of any fixed fee, for the performance of this contract will not exceed the estimated cost set forth in the Schedule, and the Contractor agrees to use his best efforts to perform the work specified in the Schedule, and all obligations under this contract within such estimated cost. If at any time the Contractor has reason to believe that the costs which he expects to incur in the performance of this contract in the next succeeding sixty (60) days, when added to all costs previously incurred, will exceed seventy-five percent (75%) of the estimated cost then set forth in the Schedule, or if at any time, the Contractor has reason to believe that the total cost to the Government, exclusive of any fixed fee, for the performance of this contract will be substantially greater or less than the then estimated cost thereof, the Contractor shall notify the Contracting Officer in writing to that effect, giving the revised estimate of such total cost for the performance of this contract.

"(b) The Government shall not be obligated to reimburse the Contractor for costs incurred in excess of the estimated cost set forth in the Schedule, and the Contractor shall not be obligated to continue performance under the contract or to incur costs in excess of the estimated cost set forth in the Schedule, unless and until the Contracting Officer shall have notified the Contractor in writing that such estimated cost has been increased and shall have specified in such notice a revised estimated cost which shall thereupon constitute the estimated cost of performance of this contract. When and to the extent that the estimated cost set forth in the Schedule has been increased, any costs incurred by the Contractor in excess of such estimated cost prior to the increase in estimated cost shall be allowable to the same extent as if such costs had been incurred after such increase in estimated cost. (ASPR 7–402.2, Feb. 1959)"

2. *General Elec. Co.*, 67–1 BCA ¶ 6377 (ASBCA 1967); *General Elec. Co.* 67–2 BCA ¶ 6565 (ASBCA 1967) (on motion for reconsideration).

3. "B. *Technical and Administration Supervision*

"All activity pertaining to the technical aspects of this project will be under the technical supervision of the Project En-

cal supervision reserved to the Army Weapons Command. Although nothing in the agreement specifically contemplated it, the Command also retained funding authority.

This administrative allocation of responsibility resulted in a purported separation of contracting officer's functions and authority. Adding to the confusion was the fact that the Boston Procurement District was administering several thousand contracts concurrently with this one, had several contracting officers, and apparently had numerous Government contract representatives in subordinate positions with varied and limited grades of delegated authority. Indicative of the situation were the different signatures on the contract documents here: A Mr. Finn signed as contracting officer on the contract and on other later papers, but Messrs. Farrell and Champion also executed contract modifications or orders as contracting officers during the course of performance. Moreover, all of these documents were countersigned by a Mr. Lindblad as contracting officer, in the capacity, as the external evidence shows, of funding supervisor for the Army Weapons Command.

 The person in the Government with whom plaintiff actually dealt (through its contract administrator, Mr. Aldrich) was a Mr. John Petze. Titled a "contract specialist," Mr. Petze had no authority to modify the contract, but acted only as a Government contact for General Electric, as plaintiff was aware.[4]

The particular overrun in question was brought to Mr. Petze's attention orally by Mr. Aldrich in August 1964. Previous overruns with respect to the instant contract had been timely mentioned to the Government in writing and were subsequently funded. Mr. Petze urged Mr. Aldrich to submit his proposal in writing, but, as Mr. Aldrich testified, he "goofed," and no written notice of the overrun was received until September 25, 1964. The estimated amount of the overage was originally stated as $20,586, but was reduced to $12,888 by a letter from plaintiff in October 1964.

Plaintiff did not stop work on the contract when it became aware of the overrun, and concededly incurred its additional costs prior to notifying defendant in writing. The board suggests that plaintiff's failure to stop work was partly because both plaintiff and defendant considered the contract performance urgent. However, the board considered it likely that General Electric was motivated primarily by a desire to obtain the production contract which would naturally flow from the successful completion of the research and development performance.

Plaintiff's claim is predicated upon the correspondence between the Boston

---

gineer, Mr. Steve Thodos, Rock Island Arsenal, Rock Island, Illinois. All other administration is the responsibility of the Contracting Officer, Boston Procurement District, U. S. Army. Changes in the scope of work shall be effected only by the Contracting Officer, by properly executed modifications to the contract. * * * "

4. Plaintiff's alternate contention, with which we deal only briefly, is that the Government so clothed Mr. Petze with contractual authority that, since Mr. Petze induced and directed plaintiff to continue with the work and the Government has accepted the fruits of plaintiff's labor, defendant is now obligated to pay for what it received. *See* cases cited in The Marquardt Corp., 66–1 BCA ¶ 5576, at 26,068 nn. 5 & 6 (ASBCA 1966). The

board found, however, that neither Mr. Petze nor any other Government representative induced or directed plaintiff to continue work. This conclusion is amply supported by testimony in the record. Moreover, the board findings that Mr. Petze's authority was strictly limited and that Mr. Aldrich, from his own testimony, knew of these limitations also have substantial evidentiary basis. General Electric's right to stop work under the Limitation of Cost clause until directed to proceed by a contracting officer was clear. Plaintiff has not shown any justification for the application of the so-called "waiver" concept as developed in the board cases. We agree with the board and defendant that plaintiff has not proven its right to recover on this ground.

Procurement District and the Army Weapons Command subsequent to General Electric's notice of September 1964. On October 2, 1964, Mr. Whalley, a contracting officer's representative and Mr. Petze's superior, wrote to the Army Weapons Command concerning the availability of funds for modification of the contract by reason of the overrun. Mr. Lindblad, who, as previously mentioned, was funding contracting officer for the Command, replied on October 22, 1964, requesting investigation and justification of the contractor's claim in terms of the Limitation of Cost article. In January 1965, Government representatives investigated the overrun and found the costs stated in plaintiff's submission to be reasonable. On March 9, 1965, Mr. Whalley again wrote the Command, stating that the additional costs were justified on the basis of Government analyses and recommending funding of the overrun. The reports of the investigators were included.

On June 7, 1965, the Army Weapons Command wrote asking several questions about the overage. By letter of June 30, 1965, the Boston Procurement District answered the questions and stated the legal opinion that neither advance notice nor a request for continued work was mandatory to the funding of the overrun. The letter concluded as follows:

> 4. It is the opinion of the undersigned that it is within the discretionary authority of the Contracting Officer under the contract article, "Limitation of Costs," to fund the overrun of $12,880.00 [*sic*], and the undersigned further recommends that the Contracting Officer take such funding action.

FOR THE COMMANDER:

/s/ Sumner A. Marcus
SUMNER A. MARCUS
Chief, Legal Office

CONCUR WITH RECOMMENDATION:
/s/ R. F. McDermott
_____
R. F. MCDERMOTT
Lt Col, Ord Corps
Contracting Officer

———◆———

On August 1, 1965, the previously delegated administrative authority with respect to this contract and others was removed from the Boston Procurement District and reverted to the Army Weapons Command. Mr. Lindblad assumed the duties of procuring contracting officer. On September 29, 1965, Mr. Lindblad wrote to the Defense Contract Administration Services Region, Boston, indicating that the June 30 letter from the Boston Procurement District did not provide justification for funding the overrun. He further stated that the request for funds was disapproved "unless a determination is made by the Administrative Contracting Officer that he had explicitly or tacitly acquiesced to the continuation of work, having full knowledge of the cost overrun." The Region replied that no Government personnel knew of the overrun prior to September 25, 1964, but nonetheless confirmed the previous recommendation of the Boston Procurement District that the overrun be funded. After additional correspondence along the same lines, as well as letters from plaintiff further modifying its estimate of overrun costs, Mr. Lindblad issued a final decision on September 7, 1966, denying reimbursement on the basis of the Limitation of Cost article.

Plaintiff argues that the concurrence of Lieutenant Colonel McDermott in the letter of June 30, 1965, signed by Mr. Marcus, was an effective decision by a contracting officer that plaintiff was entitled to its additional overrun costs.[5] We agree.

The language of the Limitation of Cost clause and a long line of board decisions indicate that the Government is not obligated to reimburse a contractor for overrun costs of which it has no timely notice. *E. g.*, Airtech Servs., Inc., 68–2 BCA ¶ 7290 (DOT CAB 1968); Pickard & Burns Electronics, 68–2 BCA ¶ 7149 (ASBCA 1968); Engelhard Indus., Inc., 68–1 BCA ¶ 6951 (ASBCA 1968); The Marquardt Corp., 66–1 BCA ¶ 5576 (ASBCA 1966), and cases cited. Yet, although the Government is not compelled to fund an overrun in the absence of proper notice, it is within the discretionary authority of the contracting officer to allow the additional costs. *See* United Shoe Mach. Corp., 68–2 BCA ¶ 7328, at 34,091 (ASBCA 1968); *The Marquardt Corp., supra.*

In denying plaintiff's appeal and motion for reconsideration, the board, whether in reliance upon testimony that Colonel McDermott had authority only up to $10,000 or upon the administrative framework, found that a contracting officer at the Boston Procurement District did not have authority to fund an overrun without the approval of the Army Weapons Command. It also found that Colonel McDermott's recommendation could not amount to a contracting officer's decision. Defendant has conceded

in its reply brief before the court, however, that the testimony before the board concerning the colonel's monetary authority was in error, and that in fact he was empowered to handle matters involving amounts up to $1,000,000.

This concession makes it clear that it was unnecessary for Colonel McDermott to resort to the Army Weapons Command for authority to fund the overrun. He had already been delegated the necessary power. However desirable it seemed to the Command to retain all funding responsibility, by the Army's delegation of monetary authority to the colonel and by the Command's failure to somehow limit that authority with respect to the instant contract, through inclusion of a specific provision or otherwise, the Army Weapons Command did not reserve all control over funding. Under the facts of this case, the internal administrative scheme whereby the Boston Procurement District was to defer to the Army Weapons Command concerning funding cannot diminish Colonel McDermott's authority. His grant of authority can only be properly viewed as permitting an exception to the expected practice. The board holding or finding to the contrary is in error as a matter of law.

The question which remains is what legal effect is to be given to the concurrence of Colonel McDermott in the recommendation of the chief legal officer under the instant circumstances. The evidence before the board showed conclusively that the Boston Procurement District from the first official

---

5. Defendant argues that plaintiff is estopped to regard Colonel McDermott's concurrence as a contracting officer's decision, since it elected to appeal from the decision of Mr. Lindblad. In answer to this contention, we note that plaintiff was not even aware of the pertinent internal correspondence until some time after Mr. Lindblad's decision. Considering the 30-day limitation in the Disputes clause upon appeals from contracting officers' decisions, it is apparent that plaintiff was in no position to "elect" which decision it would appeal. Indeed, even

had plaintiff known within time of Colonel McDermott's recommendation, the contractor obviously would not have challenged that finding, since it was favorable. Moreover, before the board defendant responded to the substance of plaintiff's argument and the board decision on this claim was rendered on the merits. We fail to see how defendant has relied on plaintiff's appeal from Mr. Lindblad's decision to its detriment. *See* Williamsburg Drapery Co. v. United States, 369 F.2d 729, 736, 177 Ct.Cl. 776, 789 (1966).

notification of the overrun consistently expressed the opinion that General Electric was entitled to reimbursement for its additional costs. It was therefore not unlikely that Colonel McDermott was acquainted with the facts underlying the overrun dispute.[6] Whether he was aware of the situation prior to June 30, 1965, it seems clear that, as a responsible Government official, he would have duly investigated the matter before indicating his concurrence, *as contracting officer,* in a recommended course of action. Failure to do so before signing in an official capacity would have been neglect of duty. Unless evidence to the contrary is produced, the law presumes that official actions are properly taken. *See* Biddle v. United States, 186 Ct.Cl. 87, 104 (1968); Holman v. United States, 383 F.2d 411, 181 Ct.Cl. 1 (1967); Harrington v. United States, 161 Ct.Cl. 432 (1963).

We disagree with the board's conclusion that Colonel McDermott used the definite language of recommendation merely as an executive notation that the letter had crossed his desk. To conclude, in the absence of any direct evidence, that a contracting officer would so loosely use language embodying his authority conflicts with the mentioned presumption. In this regard, the board's decision is unsupported by substantial evidence and in error as a matter of law.

We find, therefore, that Colonel McDermott was aware of the overrun situation and his indication of concurrence meant exactly what it said: that he, as contracting officer, approved the funding of the overrun and favored reimbursing plaintiff for its costs. Under the facts present here, we believe that when an authorized contracting officer expresses a definite opinion concerning the merits of a claim with knowledge of the relevant facts, a "decision" has been made.

As we have emphasized numerous times, it is the unfettered opinion of the person delegated as decision-maker by the parties to the contract that is determinative. *E. g.,* New York Shipbuilding Corp. v. United States, 385 F.2d 427, 180 Ct.Cl. 446 (1967) (and cases cited); John A. Johnson Contracting Corp. v. United States, 132 F.Supp. 698, 132 Ct.Cl. 645 (1955). There is no evidence in this record that Colonel McDermott was not expressing his own opinion when he concurred in Mr. Marcus' recommendation. *Cf.* John A. Johnson Contracting Corp. v. United States, *supra.* Accordingly, the decision of a duly authorized contracting officer could not be defeated by a funding official at the Army Weapons Command. Nor, by implication, could Colonel McDermott's finding be reversed by a successor contracting officer. *See* Climatic Rainwear

6. Defendant argues that, since the usual procedure was to apply to the Weapons Command for funding action, then formally present the claim to an Awards Board, which would thereafter submit its findings to the contracting officer for his decision, Colonel McDermott would not have decided the claim at this stage in the proceedings. However, in the view we take of this case, these administrative steps would be determinative only if Colonel McDermott had less than the necessary monetary authority.

Defendant also contends that Colonel McDermott had no authority with respect to the instant contract, citing our decisions in New York Shipbuilding Corp. v. United States, 385 F.2d 427, 180 Ct.Cl. 446 (1967), and Climatic Rainwear Co. v.

United States, 88 F.Supp. 415, 421, 115 Ct.Cl. 520, 558–559 (1950). Those cases stand for the proposition that where the parties to a Government contract agree that a certain official shall determine disputed factual matters between them, this fact-finding authority cannot be delegated or exercised by someone else. In the instant case, however, no specific individual was designated as contracting officer. See footnote 3, *supra.* As previously mentioned, contract documents in this case were executed by several different contracting officers for the Boston Procurement District. In these circumstances, we cannot find that Colonel McDermott was without authority with respect to plaintiff's contract, and the cited cases are inapposite.

Co. v. United States, 88 F.Supp. 415, 115 Ct.Cl. 520 (1950). Mr. Lindblad's determination of September 1966 was therefore a nullity.[7]

■■■ The court holds that plaintiff is entitled to recover its overrun costs to the extent of $12,888, the amount recommended in the letter of June 30, 1965. No contracting officer has exercised his discretion in favor of a larger amount, and we cannot substitute our judgment for that of the proper decision-maker under the Limitation of Cost clause of the contract. We have no way of knowing whether a contracting officer would have approved the expenses plaintiff allegedly incurred over the above-stated amount. If the court were to independently redetermine the allowable overrun costs, we would be ignoring the contractual delegation of responsibility by the parties, the same type of encroachment we have condemned in the cited cases.

Plaintiff's motion for summary judgment is granted in accordance with this opinion, and defendant's cross-motion is denied. Judgment is entered for plaintiff in the amount of twelve thousand eight hundred and eighty-eight dollars ($12,888).

NICHOLS, Judge (dissenting):

Respectfully I regret to be unable to agree with the foregoing decision. I do not know whether any purely intra-government document, not communicated to the contractor, can be a notification to the contractor as the contract contemplated. I think that is indeed questionable. But if any writing is such a notification, I think it can only be such if it purports to be such. The writing here relied on purports simply to be advice to other Government officials. The commitment of the Government to reimburse for cost overruns is a serious matter and involves the control of expenditures by Congress and by fiscal officials. I would not knowingly do anything to weaken that control. The amount here involved is small, as Government contract expenditures go, but the principle is large.

---

**7.** Defendant has not argued that Colonel McDermott abused his descretion in rec-ommending the allowance of plaintiff's additional costs.