**FISCHBACH AND MOORE INTERNATIONAL CORP.**

v.

**The UNITED STATES.**

**PIERCE ASSOCIATES, INC.**

v.

**The UNITED STATES.**

**Nos. 377–78, 385–78.**

United States Court of Claims.

March 19, 1980.

Geoffrey T. Keating, Washington, D. C., attorney of record, for plaintiff Fischbach and Moore. Roy S. Mitchell, Thomas M. Brownell and Lewis, Mitchell & Moore, Washington, D. C., of counsel.

George M. Beasley, III, Washington, D. C., with whom was Asst. Atty. Gen. Alice Daniel, Washington, D. C., for defendant in No. 377–78.

Jack Rephan, Washington, D. C., attorney of record, for plaintiff Pierce Associates. Braude, Margulies, Sacks & Rephan, Washington, D. C., of counsel.

Ray Goddard, Washington, D. C., with whom was Asst. Atty. Gen. Alice Daniel, Washington, D. C., for defendant in No. 385–78.

Before DAVIS, BENNETT and SMITH, Judges.

### ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

### ON PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS, OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT

DAVIS, Judge:

These two cases, argued in tandem, present the question of whether, under *S &*

*E Contractors, Inc. v. United States*, 406 U.S. 1, 92 S.Ct. 1411, 31 L.Ed.2d 658 (1972), the heads of two separate procuring agencies could properly refuse to accept a determination of the agency's board of contract appeals favorable to the contractor, and thus compel the latter to litigate the merits of its claim in this court.[1] We hold that the agency heads had no such authority and the contractors are entitled to recover on the basis of the favorable decisions of the boards of contract appeals.

## I.

*No. 377–78 :*[2] In May 1966 plaintiff Fischbach and Moore International Corporation entered into a fixed-price contract with the United States Information Agency (U.S.I.A.) to construct and install radio transmitting and receiving facilities in the Philippines. During performance plaintiff sought from the contracting officer equitable adjustments under the contract for various asserted changes, delays, suspensions and accelerations of work. On denial of the claims by the contracting officer, plaintiff appealed to the Armed Services Board of Contract Appeals (ASBCA) which had been designated by U.S.I.A. to hear and determine such disputes under the standard Disputes clause of the contract. After a hearing on entitlement the ASBCA held that certain actions by U.S.I.A. were a constructive change and remanded the matter for negotiation of the appropriate equitable adjustment. *Fischbach & Moore Int'l Corp.*, ASBCA No. 14216, 71–1 BCA ¶ 8775, 71–2 BCA ¶ 9081. These negotiations failing, plaintiff again appealed to the board which, after a further hearing, allowed an equitable adjustment of $796,067, of which $190,000 was increased profit for use of equity or borrowed capital in the performance of the changed work; this increased profit was measured at the rate of 6 percent per an-

num on $367,693, from August 1, 1967 (the date the construction problem involved in the case became apparent) to the date of the ASBCA decision on quantum (Dec. 13, 1976). *Fischbach & Moore Int'l Corp.*, ASBCA No. 18146, 77–1 BCA ¶ 12,300.

In February 1977, the Acting Director of U.S.I.A. informed plaintiff in writing that it would pay all of the award except the $190,000 allowed for increased profit. That segment of the ASBCA award was considered by the agency head to be erroneous as a matter of law and therefore not binding on U.S.I.A. under the Wunderlich Act. Plaintiff subsequently received payment of the balance of the award ($606,067) and now sues for the $190,000 withheld by the agency. Plaintiff's position is that it is entitled to that sum because it was awarded by the board and neither the agency head nor this court has authority to consider whether the board's determination on that point was or was not erroneous. Defendant urges that we can and should hold that the award of the $190,000 was erroneous as a matter of law, and therefore unrecoverable by plaintiff.

*No. 385–78 :*[3] In November 1974 plaintiff Pierce Associates, Inc. contracted with the General Services Administration (G.S.A.), for a fixed price, for the mechanical work on the first phase of the Washington Technical Institute in the District of Columbia. Plaintiff claimed government-caused delays in the course of performance and, when the contracting officer refused to acknowledge these delays to the extent claimed, plaintiff appealed to the General Services Administration Board of Contract Appeals (GSBCA). That tribunal granted part of the relief sought by Pierce Associates and remanded the case to the contracting officer for initial determination of the proper equitable adjustment. *Pierce Associates,*

1. The cases were both filed well before the effective date of the Contract Disputes Act of 1978, Pub.L.No.95–563, 92 Stat. 2383, 41 U.S.C. § 601 *et seq.* and are not governed by that statute. See note 12, *infra.*

2. The relevant, undisputed facts are shown by the cross-motions for summary judgment.

3. In their briefs on plaintiff's motion for judgment on the pleadings or, alternatively, for summary judgment, both parties agree on these relevant facts.

*Inc.*, GSBCA No. 4163, 77–2 BCA ¶ 12,746. The Government's motion for reconsideration was denied by the board in an opinion. *Pierce Associates, Inc.*, GSBCA No. 4163, 78–1 BCA ¶ 13,078.

Plaintiff then submitted a claim for $700,819 as the equitable adjustment to which it was entitled, but the Administrator of G.S.A. wrote in response that he considered the board's decision as lacking finality under the Wunderlich Act and the Disputes clause and therefore as not binding on G.S.A. A copy of this letter was furnished to the contracting officer. It is undisputed that the Administrator's letter constituted a refusal to pay plaintiff or to allow any amount to be determined by the contracting officer as the equitable adjustment under the board's decision.

By its motion for judgment on the pleadings, or alternatively, for summary judgment,[4] plaintiff asks us to hold, without review under the standards of the Wunderlich Act, that the GSBCA's favorable decision is automatically final and binding on the G.S.A. and the Government. Defendant seeks, on the other hand, to have us review the Board's decision for correctness under the standards of the Wunderlich Act.

## II.

The seminal decision on the power *vel non* of the Government to compel Wunderlich Act review by this court of a determination, favorable to the contractor, by the procurement agency of a Disputes-clause controversy is *S & E Contractors, Inc. v. United States,* 406 U.S. 1, 92 S.Ct. 1411, 31 L.Ed.2d 658 (1972). There, the dispute was determined, on the contractor's appeal from the contracting officer's decision, by the procuring agency itself, the Atomic Energy Commission (AEC), since it did not then have a contract appeals board. The AEC upheld the contractor's claim (in the aspect later challenged by the Government in this court) but the Comptroller General ruled that the claim could not be paid as contrary to the criteria of the Wunderlich Act. The AEC abided by this ruling and the contractor brought suit in this court. By a divided vote we held that the defendant had the right to a Wunderlich Act review in this court of the AEC determination. *S & E Contractors, Inc. v. United States,* 193 Ct.Cl. 335, 433 F.2d 1373 (1970). The Supreme Court reversed, holding that, under the Wunderlich Act and the Disputes clause, the AEC decision was final and conclusive. 406 U.S. 1, 92 S.Ct. 1411, 31 L.Ed.2d 658 (1972).[5]

In the current cases the defendant would read the Supreme Court's *S & E* decision as restricted solely to the situation in which the procuring agency (there, the AEC) is satisfied with its determination favorable to the contractor but in which outside agencies (there, the General Accounting Office and the Department of Justice) are attempting to upset the procuring agency's determination. The present cases are significantly different, defendant insists, because the heads of the procuring agencies (U.S.I.A. and G.S.A.) have made it clear that they reject and repudiate the determinations favorable to the contractors rendered by the boards of contract appeals.

Even if we accept defendant's general approach that *S & E* was concerned only with a "settlement" made by the procuring agency and the contractor which is later challenged by an outside body, we think that rationale squarely covers the cases now before us. In arguing to the contrary, defendant passes over the critical fact here that in each instance the head of the procuring agency had expressly delegated his full Disputes clause authority to the board of contract appeals without reserving power to review, reconsider, or reject the rulings

---

4. Ruling that the case at the outset required only a consideration of the Government's right to compel review by its refusal to honor the finality of the administrative decision (which plaintiff in no way contests), the trial judge ordered plaintiff to file such a motion.

5. Fraud and bad faith on the part of the contractor were not involved in *S & E Contractors,* just as they are not asserted by the defendant in the present cases.

of the board.[6] Those delegations meant that, for Disputes clause and Wunderlich Act purposes, the boards, not the agency heads, represented the procuring agencies— and the boards' determinations were therefore the full equivalent of the AEC determinations in *S & E.* To rephrase it, for our purposes the boards were the agencies and were also the Federal Government. *See S & E,* 406 U.S. at 4, 10, 92 S.Ct. at 1414, 1417. Accordingly, the procuring agencies had each reached the same kind of settlement with the contractor about which the Supreme Court spoke in the *S & E* opinion.

Just as the contractor in *S & E,* the plaintiffs in the present litigations had the right and expectation that a favorable board decision would be "final and conclusive," completely ending the dispute with the procuring agency. The later repudiations by the heads of the agency were without effect because those heads had not reserved or retained such power in themselves.[7] Their unauthorized actions did not undo the authorized settlement of the contractual dispute which had already been obtained by the agreement of the boards with plaintiffs' claims.[8]

**6.** In both cases the contracts contained the standard Disputes clause, with immaterial variations. These clauses each provided for the contractor's appeal from a contracting officer's decision to be decided by "the head of the agency *or* his duly authorized representative" (emphasis added) and such determination was to be "final and conclusive."

The Director of U.S.I.A. had delegated his authority to decide Disputes clause controversies to the ASBCA. 41 C.F.R. § 19–60.000 (1976), provided that the ASBCA was "designated the authorized representative of the Director of the U.S. Information Agency to hear, consider, and determine appeals by contractors from final decisions of contracting officers * * *," and 41 C.F.R. § 19–60.402 (1976) declared that the "Armed Services Board of Contract Appeals is the authorized representative of the Director, U.S. Information Agency, in hearing, considering and determining, *as fully and finally as might the Director, U.S. Information Agency:*

(a) Appeals by contractors from decisions of contracting officers * * *" (emphasis added).

There is no contention that the Director lacked authority to make this delegation.

Similarly, the Administrator of G.S.A. had expressly delegated his Disputes clause authority to the General Services Administration Board of Contract Appeals and likewise declared that "The Board has authority to determine appeals falling within the scope of its jurisdiction *as fully and finally as might the Administrator himself.* (emphasis added). 41 C.F.R. § 5A–60.101(1) (1976). Here, too, there is no argument that the Administrator lacked power to make such a delegation, and the statutory basis for the delegation is plain. *See* 41 U.S.C. § 257(a).

**7.** We have consistently held that where the contract or the controlling regulations designate (without qualification) a specific officer or body as the one to render a contractual decision under a Disputes clause (or comparable provision), other persons (including higher offi-

cials) cannot displace the designated decisionmaker. *See New York Shipbuilding Corp. v. United States,* 180 Ct.Cl. 446, 457–61, 385 F.2d 427, 433–36 (1967); *Schlesinger v. United States,* 182 Ct.Cl. 571, 581–84, 390 F.2d 702, 708–09 (1968); *General Electric Co. v. United States,* 188 Ct.Cl. 620, 629–30, 412 F.2d 1215, 1221–22 (1969); *Southern Waldrip and Harvick Co. v. United States,* 167 Ct.Cl. 488, 495–97, 334 F.2d 245, 249–50 (1964).

**8.** Neither the Director, U.S.I.A., nor the Administrator of G.S.A. had qualified the delegations referred to in note 6, *supra,* nor had they indicated in any way that they retained or reserved authority to oversee the board's decisions. In the case of G.S.A., its regulations provided a procedure for payment which plainly assumed that a board decision favoring the contractor would be automatically implemented in ordinary course. 41 C.F.R. § 5A–60.273(a) and (c) (1976). This regulation declared: "*Decisions of the Board shall be promptly implemented.* * * Where the Board does not uphold the decision of the contracting officer and the decision allows payment in favor of the contractor, the contracting officer will prepare a supplemental agreement, with advice of counsel, to be signed by both parties. *This will ensure against further litigation of the same dispute.* The contracting officer will then forward his recommendation for payment to the appropriate accounting center with the original of the supplemental agreement (for the contract file) and a copy of the decision of the Board." (emphasis added).

In No. 385–78, *Pierce Associates, Inc.,* the then Administrator of G.S.A. has given an affidavit saying, conclusorily, that he interpreted G.S.A. regulations "as not precluding the Administrator from making a decision contrary to the decision of the Board." We find no support for this position and hold that it is contrary to the text, purpose, and history of the delegation to the board and the relevant G.S.A. regulations. See also note 11, *infra.*

Nothing in the prevailing Supreme Court opinions in *S & E* runs counter to this analysis, and much supports it. Mr. Justice Douglas's opinion for the Court stated the question and decision in terms which are precisely applicable here, *mutatis mutandis:*

In plain lay language the question then is whether, absent fraud or bad faith, the contractor can rely on the ruling of the federal agency with which it made the contract or can be forced to go through still another tier of federal review. We hold that absent fraud or bad faith the federal agency's settlement under the disputes clause is binding on the Government; that there is not another tier of administrative review; and that, save for fraud or bad faith, the decision of AEC is "final and conclusive," it being for these purposes the Federal Government. 406 U.S. at 4, 92 S.Ct. at 1414.

Throughout its opinion, the Court refers to the successful resolution of the contractor's "dispute" with the procuring agency as settling or ending the controversy. See 406 U.S. at 4, 8–10, 12, 14–15, 17–19, 92 S.Ct. at 1414, 1416–1417, 1418, 1419–1420, 1420–1421. In summing up, the opinion says: "This is simply an instance where a contractor successfully resolved its disputes with the agency with which it had contracted and to whom that power had been delegated." 406 U.S. at 19, 92 S.Ct. at 1421. The same emphasis is revealed in Mr. Justice Blackmun's concurring opinion for four Justices. 406 U.S. at 19–23, 92 S.Ct. at 1421–1423.

There is no reason why this principle should not apply as much to cases where (as here) the agency's power is wholly delegated to a contract board which rules in the contractor's favor and the agency head then improperly attempts to reopen the dispute, as it did to *S & E* where AEC exercised its final authority to settle the dispute but the General Accounting Office and the Department of Justice improperly sought to keep the dispute alive. Exactly the same purposes are served by holding in each situation that the determination of the agency body empowered to decide the dispute finally is not subject to further review or reopening.[9]

The prevailing *S & E* opinions show, too, that the Supreme Court was quite aware of the boards of contract appeals and their role in the adjudication of Disputes-clause controversies. 406 U.S. at 17–18, 21, 92 S.Ct. at 1420–1421, 1422. "So far as the Wunderlich Act is concerned, it is irrelevant whether the administrative agency deciding the dispute is the AEC or the AEC's board of contract appeals." 406 U.S. at 17, 92 S.Ct. at 1420. The Court's opinion then goes on to reject the view that a board decision should be treated differently under the Wunderlich Act from a determination by the head of the agency. 406 U.S. at 18, 92 S.Ct. at 1421.[10] At the same time the Court recognized implicitly that the deciding tribunal and the agency head both have to abide by the governing rules and regulations as to reopening and reconsidering a

**9.** The Court pointed out in *S & E* that "[t]he purpose [of the Disputes clause system] of avoiding 'vexatious litigation' would not be served, however, by substituting the action of officials acting in derogation of the contract (footnote omitted). The result in some cases might be sheer disaster. In the present case nearly a decade has passed since petitioner [S & E] completed the performance of a contract under which the only agency empowered to act determined that it was entitled to payment. To postpone payment for such a period is to sanction precisely the sort of 'vexatious litigation' which the disputes process was designed to avoid." 406 U.S. at 8, 92 S.Ct. at 1416.

**10.** Justice Blackmun's opinion pointed out the anomaly of giving finality to a contracting offi-

cer's decision favoring the contractor "while a decision at the higher level of the agency itself does not." In that connection he quoted at length from the dissenting opinion of Judge Collins in this court which explicitly refers to board decisions favorable to the contractor. 406 U.S. at 20–21, 92 S.Ct. at 1422.

This court's *S & E* opinion, which the Supreme Court reviewed, pointed out that the Secretary of Defense and the Administrator of G.S.A. had reserved to themselves no power of review or ratification of Board decisions. 193 Ct.Cl. at 348, 433 F.2d at 1379. It can be assumed, therefore, that the Supreme Court knew that at least the main procurement agencies have given final authority to their boards of contract appeals.

decision already made. See 406 U.S. at 18–19, 92 S.Ct. at 1421–1422.

Our decisions since *S & E* are likewise in harmony with the position that, once a dispute has been resolved by a contract appeals board and the contractor accepts that decision fully, an agency head who has not reserved to himself the power to review, modify, or repudiate the board's determination[11] cannot force judicial review in the way the heads of U.S.I.A. and G.S.A. have tried to do here. In *Roscoe-Ajax Constr. Co. v. United States,* 204 Ct.Cl. 726, 499 F.2d 639 (1974), we said that "*S & E Contractors* obviously controls where the claimant accepts the agency decision *in toto* * * *." *Id.* at 736, 499 F.2d at 643. To the same effect see *H & M Moving, Inc. v. United States,* 204 Ct.Cl. 696, 713, 499 F.2d 660, 669 (1974), and *General Dynamics Corp. v. United States,* 214 Ct.Cl. 607, 621, esp. n. 3, 558 F.2d 985, 992–93, esp. n. 3 (1977). And the House Committee on the Judiciary, in recommending that the new Contract Disputes Act should give the Government rights to seek judicial review, recognized that *S & E Contractors* essentially foreclosed such judicial review; the Committee's report said that the "*S & E* decision has generally been interpreted as meaning that the so-called 'right of review' is limited to the contractor in disputes cases" and that the new bill's proposal "concerning appeal from a decision of an agency board of contract appeals by the Government involves a basic change in the law and practice relat-

ing to contracts." H.R.Rep.No.1556, 95th Cong., 2d Sess. 13, 20.[12] These statements of this court and of the House Committee contradict defendant's present position that *S & E* controlled only a very special and unique situation unlikely to recur.

### III.

In *Pierce Associates, Inc.,* No. 385–78, defendant charges that the board decision is improper because its factual findings are not supported by substantial evidence, the decision was arbitrary and capricious, and was also grounded in errors of law. In that respect the case before us is precisely on all fours with *S & E Contractors,* 406 U.S. at 3, 92 S.Ct. at 1413, as involving an attack by the defendant on administrative findings of fact. In *S & E* the Supreme Court indicated clearly that neither facts nor law were to be reviewed.

In *Fischbach and Moore,* No. 377–78, the defendant's only charge of invalidity is that the board's allowance of a profit factor measured by interest was erroneous as a matter of law, because contrary to the prohibition against an interest award (unless affirmatively authorized by contract or statute). We agree that on this score there is grave doubt as to the correctness of the board's legal ruling. *See Framlau v. United States,* 215 Ct.Cl. 185, 196–99, 568 F.2d 687, 693–95 (1977);[13] *Dravo Corp. v. United States,* 219 Ct.Cl. ——, 594 F.2d 842 (1979). Nevertheless, once a "settlement" with the agency is reached, *S & E Contractors* covers

11. So far as we are aware, very few, if any, agency heads have such reservations in effect, or have had for many years, with respect to boards of contract appeals. Prior to the 1974 rules (which govern No. 385–78) the Administrator of G.S.A. did reserve the right initially to decide an appeal himself (instead of having the board do it), but even then he reserved no power to review or reverse a board decision made by the board in ordinary course. See Rules of the General Services Administration Board of Contract Appeals, Preface to Rules (November 2, 1964); and second paragraph of note, 10, *supra.* It is relevant that the 1964 Rules provided that when the Administrator reserved initial decision for himself he could still have the board submit findings and recommendations, but it is plain, contrary to the normal situation, that in those special circum-

stances the board acted only in an advisory capacity and the Administrator was the deciding official.

12. For the future the Contract Disputes Act of 1978, Pub.L.No.95–563, 92 Stat. 2383, 41 U.S.C. §§ 601 *et seq.,* provides in section 8(g)(1)(B) that an agency head may appeal an adverse board decision to this court if he determines an appeal should be taken and receives the prior approval of the Attorney General. See also section 10(b) and (c). This part of the new Act does not govern or apply to the present cases. See note 1, *supra.*

13. The *Framlau* decision refused to follow the board's decision in the instant *Fischbach & Moore* case. 215 Ct.Cl. at 199, 568 F.2d at 694.

issues of law as well as factual questions. The Supreme Court's opinion expressly rejects the contention that in that situation errors of law are open for judicial review at the instance of the Government even though findings of fact may not be scrutinized. 406 U.S. at 9, note 6, 92 S.Ct. at 1416. The Court said: " * * * there is no reason to believe that the two clauses [of the Disputes article] should not be considered *in pari materia* or that a different avenue for review should apply to legal questions than to those of fact. * * * The difference between the two clauses relates only to the standard of reviewability and does not establish separate avenues of review." [14] The basic theory of *S & E* —that the whole matter is at an end whenever a final settlement is made at whatever level of the disputes process—requires that final administrative determinations favorable to contractors be accepted (if the contractor accepts them) whether they be determinations of fact or rulings of law. Defendant has no right, therefore, to challenge the board's ruling in this court, erroneous though it may be, and we have no authority to pass upon it.

### IV.

It follows from our holdings in Parts II and III, *supra,* that it was a breach of contract for U.S.I.A. to refuse to pay Fischbach and Moore, in No. 377–78, the $190,000 still owing from the award of the ASBCA, and for G.S.A. to refuse to allow the G.S.A. contracting officer to negotiate and, if necessary, determine the amount of the equitable adjustment owing to Pierce Associates, Inc., in No. 385–78, under the decision of the GSBCA. In neither case were the requirements of the Disputes clause, calling in these cases for acceptance of the board determinations without further litigation or delay, observed by the Government. These refusals were substantial breaches, vindicable in this court. *De Mauro Constr. Corp. v. United States,* 215 Ct.Cl. 364, 376–77, 568 F.2d 1322, 1329 (1978); *Manpower, Inc. of Tidewater v. United States,* 206 Ct.Cl. 726, 731, 513 F.2d 1396, 1398 (1975); *Universal Ecsco Corp. v. United States,* 181 Ct.Cl. 10, 18–19, 385 F.2d 421, 425–26 (1967); *New York Shipbuilding Corp. v. United States,* 180 Ct.Cl. 446, 461–64, 385 F.2d 427, 436–38 (1967).

In *Fischbach and Moore,* No. 377–78, there is no need for any further proceedings. Under the board's award, plaintiff is still owed $190,000, and we can enter judgment for that amount.

In *Pierce Associates, Inc.,* No. 385–78, the amount of the equitable adjustment is still to be determined.[15] The issue is whether that should be done by remand to the G.S.A. contracting officer or through proceedings in the Trial Division of the court. In parallel circumstances of a deliberate refusal by the agency to negotiate an equitable adjustment directed by a contract appeals board, the court recently held that the action here was for breach of contract and the quantum of recovery should be determined in the Trial Division. *De Mauro Constr. Co. v. United States, supra,* 215 Ct.Cl. at 377, 568 F.2d at 1329. In No. 385–78 we follow that decision.

### CONCLUSION

In No. 377–78, plaintiff's motion for summary judgment is granted, defendant's motion is denied, and judgment is entered for plaintiff in the sum of One Hundred and Ninety Thousand Dollars ($190,000).

In No. 385–78, plaintiff's motion for judgment on the pleadings is granted,[16] and the case is remanded to the Trial Division for further proceedings, pursuant to Rule

---

14. The Court's opinion does not even discuss the content of the legal issues raised by the Government' in *S & E* though it observes that such issues were included in the attack on the AEC's determination. 406 U.S. at 3, 92 S.Ct. at 1413.

15. There is no basis for simply accepting, without consideration or probing, plaintiff's claim to the G.S.A. of $700,819 as the proper sum.

16. Because the pleadings contain all the appropriate information for our disposition of the case, it is unnecessary to consider plaintiff's alternative motion for summary judgment.

131(c), to determine the quantum of recovery to which plaintiff is entitled under the decisions of the General Services Administration Board of Contract Appeals.