# United States Court of Appeals for the Federal Circuit

---

**SUFI NETWORK SERVICES, INC.,**
*Plaintiff-Appellee*

v.

**UNITED STATES,**
*Defendant-Appellant*

---

2015-5151

---

Appeal from the United States Court of Federal Claims in No. 1:11-cv-00804-TCW, Judge Thomas C. Wheeler.

---

Decided: March 29, 2016

---

FREDERICK W. CLAYBROOK, JR., Crowell & Moring, LLP, Washington, DC, for plaintiff-appellee. Also represented by BRIAN TULLY MCLAUGHLIN.

DOUGLAS T. HOFFMAN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant-appellant. Also represented by BENJAMIN C. MIZER, ROBERT E. KIRSCHMAN, JR., STEVEN J. GILLINGHAM.

---

Before NEWMAN, LOURIE, and TARANTO, *Circuit Judges*.

TARANTO, *Circuit Judge*.

This government contract case returns to us after the completion by a contract appeals board of the remand proceedings that we ordered in 2014. The board reached its final decision in early 2015, and the private contractor promptly accepted the decision. When the United States challenged its own board's decision, the Court of Federal Claims dismissed the challenge. We affirm.

BACKGROUND

As the parties agree, this case is governed by the Wunderlich Act, codified at 41 U.S.C. §§ 321–322 before its repeal in 2011. Under a contract with the Air Force, SUFI Network Services, Inc. invested money to build and to operate telephone systems at certain Air Force bases and was to earn returns on that investment for fifteen years (for each installation) from per-call charges, the revenue to be shared with the Air Force. The Air Force breached the contract in various ways by allowing con-tractually prohibited diversions of calls from the SUFI phones, depriving SUFI of revenue. *See SUFI Network Servs., Inc. v. United States*, 755 F.3d 1305, 1309–10 (Fed. Cir. 2014) (*2014 CAFC Decision*).

Following the contractually prescribed process for dispute resolution, SUFI brought claims against the Air Force, and the Armed Services Board of Contract Appeals (Board or ASBCA) rendered a decision on those claims. The Board found breach and awarded roughly $2.8 million (plus interest) on one group of claims and roughly $4.6 million (plus interest) on another. *See* J.A. 3899–3900. The award on the first group of claims became final and has not been at issue since then. SUFI was dissatis-fied with the Board's damages determinations on the second group of claims, so it sued the United States in the Court of Federal Claims to challenge those determina-tions on numerous grounds, invoking the standards of review set by the Wunderlich Act. *See S & E Contractors,*

*Inc. v. United States*, 406 U.S. 1, 3 n.1 (1972); *United States v. Anthony Grace & Sons, Inc.*, 384 U.S. 424, 427 n.3 (1966); *United States v. Carlo Bianchi & Co.*, 373 U.S. 709, 709 n.1 (1963). The United States filed no counterclaims to challenge any aspect of the Board's decision, including the rulings on breach and damages.

After the Court of Federal Claims granted SUFI relief, *SUFI Network Servs., Inc. v. United States,* 108 Fed. Cl. 287, 321 (2012) (*2012 CFC Decision*), the United States appealed several of that court's rulings to this court. SUFI cross-appealed to obtain more relief on a few points. The United States sought to reinstate a variety of Board determinations on damages, but it asked in the alternative that this court order a remand for the Board to exercise its "wide discretion" in fact-finding if this court agreed with SUFI that the Board had committed errors that prejudiced SUFI. *See* Brief for Defendant-Appellant, The United States at 26, 33–34, 38, *SUFI Network Servs., Inc. v. United States*, 755 F.3d 1305 (Fed. Cir. 2014) (Nos. 2013-5039, -5040) (2014 U.S. Br.); Reply and Response for Defendant-Appellant at 30, *SUFI Network Servs., Inc. v. United States*, 755 F.3d 1305 (Fed. Cir. 2014) (Nos. 2013-5039, -5040) (2014 U.S. Reply Br.).

Our *2014 CAFC Decision* was governed by the same standard of review of the Board's rulings as governed in the Court of Federal Claims. We held that the Court of Federal Claims had not properly applied that standard in several respects. And, when we applied the proper standard of review to the Board's rulings, we agreed with a number, though not all, of SUFI's assertions of prejudicial error by the Board. We ordered the Court of Federal Claims to remand the case to the Board for further proceedings on certain issues bearing on SUFI's challenges.

The Board conducted the remand proceedings and reached a decision in early 2015. *SUFI Network Servs., Inc.*, ASBCA No. 55306, 15-1 BCA ¶ 35,878, J.A. 3899–

3924, *modified on reconsideration, SUFI Network Servs., Inc.*, No. ASBCA 55306, 15-1 BCA ¶ 35,992, J.A. 3925–3933. The new Board decision, though not giving SUFI all it sought on the claims at issue, was much more favorable to SUFI than the earlier Board decision on those claims: it awarded roughly $113 million (plus interest) rather than the original amount of roughly $4.6 million (plus interest). Indeed, the new decision was favorable enough that SUFI filed in the Court of Federal Claims, in the docket of the Wunderlich Act case that had produced the remand to the Board, a notice stating that it accepted the 2015 Board decision.

The United States, however, was dissatisfied with its own Board's decision. It filed with the Court of Federal Claims, in the same docket, a request for review of the new award. The Court of Federal Claims denied the request. *SUFI Network Servs., Inc. v. United States*, 122 Fed. Cl. 257, 263 (2015) (*2015 CFC Decision*).

The Court of Federal Claims explained that, as relevant here, "[u]nder the Wunderlich Act, only the contractor has the right to appeal from a Board decision." *2015 CFC Decision*, 122 Fed. Cl. at 259. The basis for that rule is the exchange embodied in the contract between SUFI and the Air Force, which includes a "standard 'Disputes' clause" under which SUFI gave up its rights to cease work if a dispute arose and both SUFI and the government agreed that "'the decision of the Board shall be final and conclusive.'" *See id.* at 261.[1] The "trade-off" is the con-

---

[1]    The *2015 CFC Decision* quotes the disputes clause included in the April 1996 contract:

> DISPUTES (1979 DEC)
> a. Except as otherwise provided in this contract, any dispute or claim concerning this contract which is not disposed of by agreement shall be de-

tractor's promise to stay on the job and the United States' commitment "to be bound by board decisions favorable to the contractor." *Id.* at 262.

cided by the Contracting Officer, who shall state his decision in writing and mail or otherwise furnish a copy of it to the Contractor. Within 90 days from the date of receipt of such copy, the Contractor may appeal by mailing or otherwise furnishing to the Contracting Officer a written appeal addressed to the Armed Services Board of Contract Appeals, and the decision of the Board shall be final and conclusive; provided that if no such appeal is filed, the decision of the Contracting Officer shall be final and conclusive. The Contractor shall be afforded an opportunity to be heard and to offer evidence in support of any appeal under the clause. Pending final decision on such a dispute, however, the Contractor shall proceed diligently with the performance of the contract and in accordance with the decision of the Contracting Officer unless directed to do otherwise by the Contracting Officer.

b. This 'Disputes' clause does not preclude consideration of law questions in connection with decisions provided for in paragraph "a" above, provided, that nothing in this contract shall be construed as making final the decision of any administrative official, representative, or board on a question of law.

*2015 CFC Decision*, 122 Fed. Cl. at 261; *see* Jt. App. (2014 J.A.) at 1537, *SUFI Network Servs., Inc. v. United States*, 755 F.3d 1305 (Fed. Cir. 2014) (Nos. 13-5039, -5040) (2001 version, identical except "90" replaced by "30").

The Court of Federal Claims stated that, under clear precedents now more than 35 years old, "the United States d[oes] not have the right to seek review of an adverse board of contract appeals' decision" where, as here, there is no claim of fraud or bad faith on the part of the Board and the contractor fully accepts the decision. *Id.* at 261–62; *see S & E*, 406 U.S. at 8; *id.* at 20 (Blackmun, J., with whom Burger, C.J., and Stewart and Powell, JJ., join, concurring); *Roscoe-Ajax Constr. Co. v. United States*, 499 F.2d 639, 644–47 (Ct. Cl. 1974); *Fischbach & Moore Int'l Corp. v. United States*, 617 F.2d 223, 225–28 (Ct. Cl. 1980).[2]  The cited cases make clear one policy underlying that rule: reducing contract costs to the government by avoiding the prospect, for contractors, of costly litigation and delay in payment after "the only agency empowered to act [has] determined that [the contractor] [i]s entitled to payment."  *S & E*, 406 U.S. at 8; *Roscoe-Ajax*, 499 F.2d at 644 n.6; *see 2015 CFC Decision*, 122 Fed. Cl. at 262.  The Court of Claims long ago summarized the Wunderlich Act rule: in the absence of fraud or bad faith, "the boards [a]re the agencies and [a]re also the Federal Government."  *Fischbach & Moore*, 617 F.2d at 226.

Applying those principles, the Court of Federal Claims in this case concluded: "The Air Force designated the ASBCA as its authorized representative for disputes

---

[2]    *Roscoe-Ajax* recognizes that, even if there is no fraud or bad faith, the United States may assert a counterclaim challenging a Board ruling in limited circumstances—where the counterclaim is just one "facet" of a single specific dispute that the contractor "is still keeping . . . alive in court."  499 F.2d at 646.  That principle is doubly inapplicable here: the United States asserted no counterclaims in this case; and in any event the "specific dispute is over because the contractor is satisfied."  *Id.*

arising under the contract. For purposes of this case, the 'United States' is the ASBCA, not the Department of Justice," *2015 CFC Decision*, 122 Fed. Cl. at 262, whose duty "'is to implement [the Board's] decision and not to repudiate it,'" *id.* (alteration by Court of Federal Claims) (quoting *S & E*, 406 U.S. at 13). And:

> SUFI has indicated its satisfaction with the Board's decision. By SUFI's contract with [the Air Force], the Board served as the authorized representative of the United States. The sole responsibility of the Department of Justice is to implement the Board's decision. The fact that the Department of Justice is dissatisfied with the Board's remand decision is immaterial to the Court's analysis. In assessing whether the Board followed the remand instructions of the Federal Circuit, it is enough to say that the Board obviously did what it was told. The Board promptly conducted the remand proceedings directed by the Federal Circuit. The Government cannot reject the Board's decision, and it has no right to challenge the merits of the Board's remand decision. SUFI's satisfaction with the Board's remand decision is the end of the line.

*Id.* at 262–63.

The United States appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(3) to review the final decision of the Court of Federal Claims dismissing the case.

## DISCUSSION

SUFI moved to dismiss or for summary affirmance. Based on the initial and supplemental briefing submitted by the parties, we affirm.

We need not repeat the recitation given just above of the legal principles established by the *S & E* line of prec-

edents, including *Roscoe-Ajax* and *Fischbach & Moore*. Under that body of law, it is clear that the United States could not seek review of the new Board decision if that decision were the Board's initial decision and SUFI did not challenge it under the Wunderlich Act, as there is no alleged fraud or bad faith by the Board. Here, the Board's new decision is not the first Board decision in the case. But we have been offered no good reason why that fact provides a basis for a different conclusion under the *S & E* line of authority.

The new decision is no less the position of the United States just because it is not the initial decision. Under its contract with SUFI, embodying an exchange of promises defining the dispute-resolution process, the United States is bound by the position now articulated by the Board acting in good faith and without fraud after an extensive and vigorously contested process. Holding the United States to its Board-determined position is a straightforward application of the long-established *S & E* line of authority and of the Wunderlich Act policy it implements: "respect for the parties' rights to contract and to provide for their own remedies." *Anthony Grace & Sons*, 384 U.S. at 429; *see id.* at 430 ("[T]he inadequacy or unavailability of administrative relief must clearly appear before a party is permitted to circumvent his own contractual agreement.").

The United States suggests that a different conclusion is warranted because "the Wunderlich Act was repealed" in 2011 and the Contract Disputes Act of 1978, 41 U.S.C. §§ 7101–7109—which partly replaced the Wunderlich Act (well before that Act's final repeal)—"clearly does authorize Government appeal" of adverse Board decisions. Def.-Appellant's Resp. to Pl.-Appellee's Mot. to Dismiss for Want of Jurisdiction and Mot. for Summary Affirmance at 12, ECF No. 18. The conclusion urged does not follow from the premises. The repeal of the Wunderlich Act certainly means that the legal issues presented here are

of little if any future significance.  But neither the repeal of the Act nor the distinct provisions of a different statute that is inapplicable here (and that co-existed with the Wunderlich Act for three decades, starting before *Fischbach & Moore* was decided) provides any basis for rejecting a straightforward application of the precedents under the Wunderlich Act.

The United States makes one other argument to avoid being bound by the Board decision.  It contends that it should be permitted to challenge the contractor-accepted Board decision so that the Court of Federal Claims and this court may ensure that the Board complied with this court's 2014 mandate.  We see no sound basis for that contention.

The United States cites no authorities that are on point.  It cites only decisions from quite different settings that make familiar, general points about mandate compliance.[3]  None of those decisions were rendered in cases that arose under the Wunderlich Act or involved a contract disputes clause like the one here.  And none address a mandate-compliance argument in circumstances like the ones in this case—where the government took a (contract) position that the adverse party challenged in court; the challenger secured a remand for the government (Board) to reconsider certain matters decided ad-

---

[3]    The United States cites the following decisions: *Banks v. United States*, 741 F.3d 1268, 1276 (Fed. Cir. 2014); *Federal Trade Commission v. Standard Education Society*, 97 F.2d 513, 513 (2d Cir. 1938); *Briggs v. Pennsylvania Railroad Co.*, 334 U.S. 304, 306 (1948); *United States v. Terminal Railroad Association of St. Louis*, 236 U.S. 194, 199 (1915); and *Northern Helex Co. v. United States*, 634 F.2d 557, 560 (Ct. Cl. 1980) (citing *General Atomic Co. v. Felter,* 436 U.S. 493, 497 (1978); *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 255 (1895)).

versely to the challenger; and on remand the government (Board) reached a decision that the challenger fully accepted and that, had it been made originally, the government could not challenge in court.

The argument for a "mandate compliance" exception to the clear and long-settled Wunderlich Act doctrine not only lacks support in precedent. The argument also is contrary to the simple, established basis of that doctrine. All of the rights and duties at issue are contract rights and duties that are within the broad power of the parties to determine by agreement among themselves. That is what has now occurred: the United States, through its designated representative, *i.e.*, the Board, acting in good faith and without fraud, has taken a position on those contract matters, and SUFI accepts that position. Under these circumstances, the Wunderlich Act line of authorities, applied to the disputes clause at issue, makes binding on the United States the contract position that *it* has taken through its contractually specified decision-maker.

In any event, even if we were to find a "mandate compliance" exception to the Wunderlich Act doctrine, we would not find any violation of this court's 2014 mandate by the 2015 Board decision in this case. We consider the scope of our mandate and whether it was violated de novo. *See Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 576 F.3d 1348, 1355 (Fed. Cir. 2009). "After our mandate issues, the mandate rule forecloses reconsideration of issues implicitly or explicitly decided on appeal. For an issue to be implicitly decided, it must be decided by *necessary* implication. Moreover, in interpreting this court's mandate, both the letter and the spirit of the mandate must be considered." *TecSec, Inc. v. Int'l Bus. Machs. Corp.*, 731 F.3d 1336, 1341–42 (Fed. Cir. 2013) (internal quotation marks and citations omitted); *see Retractable Techs., Inc. v. Becton Dickinson & Co.*, 757 F.3d 1366, 1371 (Fed. Cir. 2014); *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1364 (Fed. Cir. 2008); *Engel Indus.,*

*Inc. v. Lockformer Co.*, 166 F.3d 1379, 1383 (Fed. Cir. 1999). We find no mandate violation here.

Nothing in this court's mandate in 2014—nothing in our *2014 CAFC Decision* or the specific descriptions of what was to be done on remand—altered the long-established rule that the United States is bound by its own Board's determinations under the disputes clause where there is no claim of fraud or bad faith on the part of the Board and the contractor accepts those determinations. To permit the United States to challenge the 2015 Board decision would require that the United States be relieved of the obligation to respect its own Board's decision in these circumstances. This court did not grant the United States any such relief.

Moreover, the court in its 2014 decision did not give the United States any rights in the Board proceedings, substantive or procedural, that the Board did not already recognize. Indeed, the United States did not ask for any relief against the Board. This court did not restrict the Board's authority to hold the United States to any waivers or forfeitures of arguments, or require the Board to consider arguments the United States did not present to this court, or forbid the Board to rely on the existing record in deciding the remanded questions. Nor did the court constrain the Board's "wide discretion" regarding either the weighing of evidence to find facts (2014 U.S. Br. 26) or the recitation of evidence and contentions when explaining its findings of fact. *See, e.g., Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974) (court upholds "a decision of less than ideal clarity if the agency's path may reasonably be discerned"); *Newhouse v. Nicholson*, 497 F.3d 1298, 1302 (Fed. Cir. 2007) (court presumes that a fact-finder reviews all the evidence presented, even evidence not discussed by the fact-finder); *Gonzales v. West*, 218 F.3d 1378, 1381 (Fed. Cir. 2000); *Medtronic, Inc. v. Daig Corp.*, 789 F.2d 903, 906 (Fed. Cir. 1986).

Because a mandate is to be construed by considering the context, we note that no United States counterclaims for relief against the Board were before us in 2014 and this court's 2014 rulings as to deficiencies in the Board's decisions on several issues all concerned deficiencies creating potential prejudice to SUFI. Of course, as to those deficiencies, this court agreed with the United States that the *Court of Federal Claims* had erred in several respects, *e.g.*, regarding the burden of proof on certain aspects of the damages determination and the making of factual findings itself rather than remanding to the Board. *See*, *e.g.*, *2014 CAFC Decision*, 755 F.3d at 1311–13, 1319–20, 1321, 1323. But, as to the burden of proof, this court recognized that "the Board" itself "did not err in placing the burden on SUFI to prove its damages." *Id.* at 1313. More generally, all of this court's remand directives came in the context of explanations that the Board had not given SUFI's arguments and evidence their due.

Even if we were to read some of this court's explanations of Board deficiencies as mandates to the Board favoring the United States, we would not find that the Board in 2015 committed a mandate violation. The United States points to a passage in this court's 2014 decision stating that "the Board failed to consider whether an adverse inference should be drawn against the government" concerning damages, citing *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 265 (1946). *2014 CAFC Decision*, 755 F.3d at 1315. As relevant here, however, the most we did was to order the Board to consider the adverse-inference question in light of *Bigelow*. We also noted—what cannot help the United States—that "the Air Force failed to maintain [certain call] records even though it was on notice of this potential contract dispute." *Id.* The Board on remand duly considered the question in light of *Bigelow*. J.A. 3906, 3926–27.

The United States also points to the burden-of-proof discussion in our 2014 decision. *2014 CAFC Decision*, 755 F.3d at 1312–13. But the Board on remand specifically noted that its adverse-inference conclusion "did not dispense with SUFI's burden of proof of damages," a burden it had recognized even before this court's 2014 decision. J.A. 3927. The Board similarly followed this court's directive to consider the role of "official" calls under the contract between SUFI and the Air Force. *2014 CAFC Decision*, 755 F.3d at 1316. The Board found that SUFI was contractually entitled to charge for such calls, and so such calls must be included among the compensable calls lost to SUFI by the Air Force's contract-breaching diversion of calls from SUFI phones. J.A. 3905. And the Board calculated damages under Count XVI for 15-year terms "from the date of completion and acceptance of the telephone system at each site," *2014 CAFC Decision*, 755 F.3d at 1322. *See* J.A. 3918–22, 3928. This court in 2014 mandated nothing about "cut-over" dates, which the United States invokes in criticism of the 2015 Board decision.[4]

The most general sources of the United States' arguments about a mandate violation are passages in the court's discussion of Counts III and V. On both counts, this court found that the Board had inadequately consid-

---

[4] The United States made no argument about "cut-over" dates in the 2014 appeal. *See* 2014 U.S. Br. 35–38; 2014 U.S. Reply Br. 35. When the United States observed in passing that there were factual issues about when "acceptance" occurred, 2014 U.S. Br. 38, it cited only 2014 J.A. at 3836. That page comes from the parties' Joint Comments on a draft version of the *2012 CFC Decision*; in Attachment A of the Joint Comments, the parties gave various figures and stated that they agreed regarding the Count XVI calculation. 2014 J.A. at 3812 n.1.

ered SUFI's evidence that it lost far more profits than the Board had initially found. *2014 CAFC Decision*, 755 F.3d at 1316, 1318. One passage, discussing Count III, concerned whether the higher price of in-room calls on SUFI phones might make the number of (improperly available) hallway/lobby phone minutes an overestimate of lost SUFI minutes. This court said that the Board had not attempted to "assess the magnitude of any purchase-limiting effect or, more basically, consider all relevant real-world record facts that might affect whether, in this context, it might even be the case that, on balance, fewer minutes were spent on hallway/lobby calls than would have been spent on calls made from guest rooms (in the absence of hallway/lobby phones), despite the higher cost of in-room [SUFI] calls." *Id.* at 1316. Because of that deficiency, Count III was "remanded to the Board for reconsideration." *Id.* Similarly, the court found a deficiency in the Board's consideration of SUFI's evidence regarding Count V and so "order[ed] a remand to the Board for reconsideration of whether SUFI's evidence provided a reasonably certain estimate—a fair and reasonable approximation—of damages from this breach." *Id.* at 1318.

We have to generalize those passages beyond their terms to treat them as mandates running in the United States' favor, but even if we do so, we see no mandate violation. The Board in 2015 gave the issues the reconsideration this court ordered, all as part of the overall question of whether SUFI proved a reasonable estimate of its damages. J.A. 3902–10, 3926–30; *see, e.g.*, J.A. 3906 ("we hold that one can reasonably determine from the x.4619 long distance call data SUFI's lost revenues attributable to hallway/lobby" phones, "except for Rhein Main and Spangdahlem calls"), J.A. 3927 (referring to "our [the Board's] holding that SUFI's surrogate phone X.4619 call data evidence was a reasonable estimate of Count III damages and our rejection of the government's

'real-world record facts' which do not support its theories of discounted damages and revenue comparisons"). The United States in this case has relied on this court's observation that "the amount of damages to award 'is not an exact science, and the methodology of assessing and computing damages is committed to the sound discretion of the [trier of fact].'" *Ferguson Beauregard/Logic Controls v. Mega Sys., LLC*, 350 F.3d 1327, 1345 (Fed. Cir. 2003), quoted at 2014 U.S. Reply Br. 30.

The United States' mandate-violation contention now rests ultimately on a criticism of the Board for not sufficiently *discussing* each of the United States' specific evidentiary arguments. But there is no such requirement in this court's 2014 mandate, and "[w]e presume that a fact finder reviews all the evidence presented unless [it] explicitly expresses otherwise." *Medtronic*, 789 F.2d at 906; *see Newhouse*, 497 F.3d at 1302; *Gonzales*, 218 F.3d at 1381. Given how exhaustively the competing inferences from evidence were contested and examined in the numerous rounds of this dispute-resolution process, there may not be grounds for disturbing the Board decision here even under the standards of review applicable outside the mandate-compliance context. Regardless, there is no mandate violation.

## CONCLUSION

For the foregoing reasons, the judgment of the Court of Federal Claims is affirmed.

## **AFFIRMED**